511 So.2d 1333 (1987)
Samuel Bice JOHNSON
v.
STATE of Mississippi.
No. DP-43.
Supreme Court of Mississippi.
May 27, 1987.
Rehearing Denied July 14, 1987.
*1335 Clive A. Stafford Smith, Atlanta, Ga., Laurence T. Sorkin, Anthony Paduano, Lisa Pearson, Cahill, Gordon & Reindel, New York City, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., Jackson, for appellee.

ON MOTION FOR POST-CONVICTION RELIEF
HAWKINS, Presiding Justice, for the Court:
Samuel Bice Johnson filed a petition for relief under our Mississippi Uniform Post-Conviction Collateral Relief Act (CRA), Miss. Code Ann. § 99-39-1, et seq. We address only those assignments contemplated by the CRA for which we are authorized to review in a petition of this nature. For the reasons set forth, we deny his petition.
Following a trial held in the circuit court of Pike County on August 30-September 3, 1982, Samuel Bice Johnson was convicted of capital murder and sentenced to death. His conviction was affirmed by this Court on May 8, 1985, and his petition for rehearing was denied November 6, 1985; Johnson v. State, 477 So.2d 196 (Miss. 1985). The United States Supreme Court denied his petition for certiorari, Johnson v. Mississippi, ___ U.S. ___, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986), and subsequently denied his petition for rehearing, ___ U.S. ___, 106 S.Ct. 2930, 91 L.Ed.2d 557 (1986).
On August 4, 1986, he filed with this Court his petition for relief under our Mississippi Uniform Post-Conviction Collateral Relief Act (CRA), Miss. Code Ann. § 99-39-1, et seq. His petition consists of 60 pages, supported by a brief of 85 pages, a supplemental motion to amend with supporting brief, and exhibits of several hundred pages. The petition contains 43 assignments, and the amendment to the petition adds another.[1]
*1336 The purpose of a CRA petition is set forth in Miss. Code Ann. § 95-39-3(2):
(2) Direct appeal shall be the principal means of reviewing all criminal convictions and sentences, and the purpose of this chapter is to provide prisoners with a procedure, limited in nature, to review those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal.
Miss. Code Ann. § 99-39-21 reads in pertinent part:
(1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.
* * * * * *
(4) The term "cause" as used in this section shall be defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal.

(5) The term "actual prejudice" as used in this section shall be defined and limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence. [Emphasis added]
(6) The burden is upon the prisoner to allege in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred under this section.
In a petition of this nature, we are also governed by Miss. Code Ann. § 99-39-27(5):
(5) Unless it appears from the face of the application, motion, exhibits and the prior record that the claims presented by such are not procedurally barred under section 99-39-21 and that they further present a substantial showing of the denial of a state or federal right, the court shall by appropriate order deny the application.
Moreover, we do not consider on a petition of this nature issues raised and decided on the original appeal, even though theories for relief different from those urged at trial and on appeal are now asserted. Miss. Code Ann. § 99-39-21(2), (3). Dufour v. State, 483 So.2d 307, 311 (Miss. 1985), (and cases cited therein).
Within these circumscribed boundaries, we address the appropriate assignments in Johnson's petition.

I.

JOHNSON'S 1963 NEW YORK CONVICTION AS AN AGGRAVATING CIRCUMSTANCE.
During the course of the sentencing phase of trial, the State introduced an authenticated copy of a judgment of conviction of Johnson of assault, second degree with intent to commit rape, first degree, rendered by the Monroe County court New York on April 9, 1963. This was offered as one of three aggravating circumstances to support the death penalty. (R. 2171-2173). Johnson did not testify either at the guilt or sentencing phase of his trial.
During the course of his argument, the district attorney recited this conviction as a basis for the jury to render a death penalty verdict. (R. 2273)
In his motion for a new trial and on appeal, Johnson objected to the introduction of the record of this conviction because it did not channel the jury's discretion by "clear and objective standards," and because it was too remote. (Appellant's Brief, pp. 29-31) We rejected both arguments. 477 So.2d at 218-219.
In his petition for certiorari to the U.S. Supreme Court, no claim of error was made *1337 to the introduction of this record into evidence as an aggravating circumstance.
In this petition, for the first time, Johnson argues that the 1963 conviction was invalid. Apparently, following or commensurate with its filing, Johnson's counsel also took steps to have this conviction vacated by the New York courts. This Court has been furnished with a copy of an order and slip opinion of the Court of Appeals of New York, dated March 24, 1987, in which that court did indeed reverse and vacate this 1963 conviction and dismiss the indictment.
From the exhibits it appears that Johnson did not appeal his 1963 conviction and that he served a year in a New York correctional institution for this crime.
Miss. Code Ann. § 99-19-101(5)(b) provides:
(5) Aggravating circumstances shall be limited to the following:
* * * * * *
(b) The defendant was previously convicted of another capital offense of or a felony involving the use of threat of violence to the person.
The aggravating circumstances enumerated in the court's instruction at trial were:
(1) That the defendant, Samuel Johnson, was previously convicted of a felony involving the use or threat of violence to the person of another.
(2) That the defendant, Samuel Johnson, committed the capital murder for the purpose of avoiding arrest or effecting an escape from custody.
(3) The capital murder was especially heinous, atrocious and cruel.
(R. 2236)
The verdict of the jury found all three of these aggravating circumstances existed. (R. 2294)
It is apparent that Johnson waived this claim, and it is procedurally barred. At no time during his direct appeal, or in his petition for certiorari to the U.S. Supreme Court did he argue his New York conviction was constitutionally invalid. Moreover, there is nothing to suggest he took any steps to vacate this conviction until he filed this petition. On appeal Johnson's counsel alleged thirteen assignments of error, and at Johnson's own urging, his counsel added seven additional assignments. None questioned the validity of his New York conviction. See Evans v. State, 485 So.2d 276 (Miss. 1986), at 280-281.
Also, the jury found three aggravating circumstances to support its verdict. Even if we conceded that the jury had no authority to consider this conviction, the remaining two aggravating circumstances were sufficient to support the jury's verdict. Zant v. Stephens, 462 U.S. 862, 880-884, 103 S.Ct. 2733, 2744-2746, 77 L.Ed.2d 235, 252-254 (1983); Irving v. State, 498 So.2d 305, 314 (Miss. 1986).
Aside from the statutory limitation of review, we remain unpersuaded by this contention.
We have never faced this question. A somewhat similar question has been before us concerning the use of a prior criminal conviction to impeach a defendant in a criminal trial. We have held that subsequent reversal on appeal of a prior conviction did not affect a defendant's trial conviction. Young v. State, 425 So.2d 1022 (Miss. 1983); Milstid v. State, 347 So.2d 1319 (Miss. 1977); and Nicholson v. State, 254 So.2d 881 (Miss. 1971).
Also, in Phillips v. State, 421 So.2d 476 (Miss. 1982), the state used a Kentucky conviction as a basis for Phillips' conviction under one of Mississippi's habitual criminal statutes. Miss. Code Ann. § 99-19-81 (Supp. 1984). We held that when the conviction was subsequently reversed, it could constitute a basis for post-conviction relief from the habitual criminal conviction.
Under Miss. Code Ann. § 99-19-81, however, upon proof of the prior conviction a circuit judge has no alternative except to sentence to the maximum authorized by law. Such sentence cannot be suspended, and the accused will never be eligible for parole or probation prior to serving this maximum sentence. In the sentencing phase of a capital murder trial the jury is not required to sentence the defendant to death, regardless of its finding.
*1338 When a prior conviction is used under either habitual offender statute, it is, of course, certain that the defendant will receive greater punishment. The admission of a prior conviction in order to impeach the accused as a witness, or at a sentencing phase of a capital murder trial may or may not materially influence the jury.
As we noted, the jury found three aggravating circumstances existed, and of the three we have little doubt that in a rational sentencing process Zant v. Stephens, supra, the other two aggravating circumstances would carry greater weight than the New York conviction in determining Johnson's sentence. Indeed, the remoteness in time of the prior conviction was a mitigating circumstance. Johnson v. State, 477 So.2d at 219.
We eschew "harmless error" in our reasoning, however, because the district attorney argued this particular aggravating circumstance as a reason to impose the death penalty. Johnson v. State, 477 So.2d at 219. Nevertheless, we reject New York's setting aside of the 1963 conviction as a basis to vitiate the verdict of the jury.
If there is one single point emphasized by the U.S. Supreme Court decisions of Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); and Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), it is that before a jury is permitted to sentence a human being to death, it must have clear guidelines. The centerpiece of these decisions requires the jury to find one or more aggravating circumstances exist before they can impose the death sentence. Of course, any such "aggravating circumstance" must reasonably justify making the difference between imposing a life sentence or the death penalty.
If the death penalty is to be imposed without caprice or chance, there is no doubt that a crucial guideline to assist citizens who have this formidable responsibility is whether the convicted murderer has engaged in serious criminal conduct involving violence to other people in the past. Thus, the reason for Miss. Code Ann. § 99-19-101(5)(b).
There is no question but that the state proved this aggravating circumstance in this case. At the time of Johnson's trial, New York had imposed a final conviction and Johnson had served his sentence.
If we adopted Johnson's argument, the state could never use a conviction as an aggravating circumstance, because of the extreme likelihood that a foreign state could overturn the prior conviction through collateral attack. The loss of this guideline to a jury would serve to return juries to the unbridled, unchannelled, and hence, unconstitutional discretion they had in imposing the death sentence.
We are not required in this case to go as far as Nicholson, Milstid and Young, supra, in authorizing introduction of proof of a prior conviction in a capital murder case. That is, in this case, we do not address whether a prior conviction can be used as an aggravating circumstance if that conviction is subsequently reversed on direct appeal. We do hold that a foreign state cannot vitiate the death penalty verdict in this state by setting aside a prior conviction of a violent crime through a collateral relief petition.
We deem it important to add in this case that there is no evidence or indication that the post-conviction relief proceedings in the New York courts were truly adversarial. Insofar as we can determine from Johnson's petition and exhibits, the state's attorney in New York had no significant interest or concern in vouchsafing the validity of his 1963 conviction, and we find no challenge by the state's attorney of New York of Johnson's petition. Other than Johnson, this state had the greatest interest in upholding the validity of his New York conviction. Yet, this state was not made a party to Johnson's petition and had no voice in any of the New York proceedings to vacate his conviction. Indeed, we know of no method whereby this state could have been made a party to the New York proceedings, and this state probably should not have been a party. This does not remove the fact that the proceedings *1339 lacked an essential adversarial ingredient. The New York courts are, of course, the final and proper arbiters of all judicial proceedings in that state, including the disposition of post-conviction petitions. Assuredly, by our view, we suggest no impropriety in the courts of that state taking whatever action they deem appropriate in a criminal case in New York. The fact remains that Johnson was convicted in 1963 by a New York court of a serious felony involving violence to a female for which he was imprisoned in that state. No New York court extended Johnson relief from his conviction before Johnson paid his debt to the state. If his crime was serious enough for him to be convicted and final enough for him to serve time in a penal institution, it had sufficient finality to be considered as an aggravating circumstance by a jury of this state. No death penalty verdict based upon this conviction need be vitiated by the subsequent relief granted more than twenty years later by the New York Court of Appeals.
We accordingly reject all assignments of Johnson's petition based upon his 1963 conviction in the State of New York.

II.

INEFFECTIVE COUNSEL
The only remaining assignments of Johnson not clearly procedurally barred are assignments VII and VIII wherein he claims his trial counsel were ineffective in their representation of him during the guilt and sentencing phases of his trial, thus depriving him of his Sixth Amendment right to assistance of counsel. Under the assignments he lists some forty instances in which he claims his lawyers did not render professional service guaranteed to him by the Sixth Amendment.
The Sixth Amendment states the accused has the right "to have the Assistance of Counsel for his Defense."
Literally hundreds of court decisions have grappled with this phrase since the U.S. Supreme Court in Powell v. State, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932), announced the Sixth Amendment required something more than just having a person with a law license sitting at the counsel table with an accused. Also, Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed 377 (1940). A number of these cases are annotated and the various authorities examined in 4 A.L.R.4th 1  244 (1980); see also 1986 supplement.
In 1984 the U.S. Supreme Court in two seminal cases set forth guidelines to determine whether the constitutional guaranty had been met. U.S. v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); and Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Strickland tells us the benchmark inquiry is whether defense "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686, 104 S.Ct. at 2064. It is an attack on the "fundamental fairness of the proceeding." Id. at 697, 104 S.Ct. at 2070. The Court then held the "proper standard for attorney performance is that of reasonably effective assistance," and it was incumbent upon a defendant to show that "counsel's representation fell below an objective standard of reasonableness. More specific guidelines are not appropriate." Id. at 687-688, 104 S.Ct. at 2064. Also, "judicial scrutiny of counsel's performance must be highly deferential," and "every effort be made to eliminate the distorting effects of hindsight." Id. at 689, 104 S.Ct. at 2065. The Court must then determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." [Emphasis added] Id. at 690, 104 S.Ct. at 2066.
In addition, the accused must show he was prejudiced. That is, he must prove there is "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." [Emphasis added] Id. at 694, 104 S.Ct. at 2068.
And finally, in determining whether ineffectiveness of counsel justifies setting aside a conviction, the appellate court may "independently weigh the evidence," and *1340 decide whether the aggravating and mitigating circumstances on balance warranted the death penalty.
This Court has followed the guidelines of Strickland in Irving v. State, 498 So.2d 305 (Miss. 1986); Evans v. State, 485 So.2d 276 (Miss. 1986); Dufour v. State, 483 So.2d 307 (Miss. 1985); Leatherwood v. State, 473 So.2d 964 (Miss. 1985); Lambert v. State, 462 So.2d 308 (Miss. 1984); Gilliard v. State, 462 So.2d 710 (Miss. 1985).
What then does "assistance of counsel" mean?
It obviously means an accused has the right to a lawyer to represent him. Just as obviously, it cannot mean there is a constitutional guaranty to a lawyer who in hindsight made no errors in defending the case. This would be tantamount to a constitutional guaranty of non-conviction. It would lend to continued court battles with successive defense lawyers, each of whom in hindsight could be found to have made mistakes. This never ending battle would continue until the state wearily threw in the towel. Covington v. State, 600 S.W.2d 186 (Mo. App. 1980); People v. Moody, 676 P.2d 691 (Colo. 1984); Commonwealth v. Saferian, 366 Mass. 89, 315 N.E.2d 878 (1974); State v. Wolf, 347 N.W.2d 573 (N.D. 1984).
Yet, if the Sixth Amendment guaranty has any meaning it must mean more than simply having a man admitted to law practice as a defense lawyer for the accused. U.S. v. Cronic, supra. It must mean that a lawyer with some competence conscientiously represented the accused. Dufour v. State, supra. It must require both, because an incompetent can be conscientious, and an otherwise competent lawyer can by a lack of concern for his responsibility, fail in his adversarial duty.
Yet it does not necessarily mean that a lawyer was either incompetent or failed to responsibly represent his client because he made mistakes. However, conduct of an attorney, including the mistakes he made, can very well be of such proportion as to reveal the lack of competence or diligence. Leatherwood v. State, supra.
Therefore, any Court seeking to determine whether the constitutional guaranty has been met, must look at the entire performance of the attorney and determine whether the defense attorney was competent and whether he sincerely tried to assist his client. In Dufour v. State, supra, at 310, we stated: "There are, however, certain basic duties required of an attorney when representing a criminal defendant."
Unless the mistake or conduct was of such magnitude that the Court concludes the lawyer was incompetent or evidenced a failure to conscientiously fulfill his adversarial role, we will conclude the constitutional guaranty for performance of counsel as enunciated in Strickland has been met.
Admittedly, these criteria remain generalizations and subject to disagreement between lawyers and judges.
Nevertheless, the members of this Court have each had years to observe trial practice and procedure in this state, and each is able to pass judgment by studying a record to determine whether or not a particular attorney was both competent and had a responsible attitude in his client's defense of a lawsuit in this state.
Indeed, by studying a trial record an appellate judge cannot escape forming an opinion on the performance of trial counsel. The record in this case, contrary to Johnson's assertion, clearly reveals he was represented by competent counsel dedicated to his defense. We have again carefully reviewed the record, and our original view that he had competent, zealous counsel has been reinforced.
They most assuredly met the "reasonably effective assistance," and "wide range of professionally competent assistance," guidelines of Strickland. There clearly was no lack of competence, or failure of interest in their defense of Johnson to support the contention that the constitutional guaranty was not met.

III.

REFUSED MOTION FOR CONTINUANCE
For example, Johnson charges his counsel failed to properly move for a continuance, *1341 thereby depriving him of expert witnesses, H. Dale Nute and Stephen B. Halligan. These experts examined Johnson's and the other participants' homicide clothing, and studied the laboratory reports of the state and Federal Bureau of Investigation. We have reviewed their letter to Diaz, Johnson's trial defense counsel, dated August 23, 1982, and we find nothing in this report which compels us to conclude that the defense counsel erred in not having these witnesses present at trial. These experts did not reach a conclusion so at odds with the state's proof so as to seriously challenge Johnson's guilt. Thus their absence from trial does not appear prejudicial.
It is just as plausible that their testimony would have been weak, and upon cross-examination their testimony would have helped the state's case. On the direct appeal of this case, we suspected Johnson's counsel moved for a continuance as a tactical gesture  not really expecting the court to grant it  but hoping that the circuit judge's refusal to grant the continuance would be considered error on appeal. It is not an altogether unfamiliar tactic of defense counsel in criminal as well as civil cases to produce an appeal record cluttered with adverse rulings. Some occasionally stick on appeal. The temptation to use this tactic increases in inverse proportion to the weakness of counsel's case.

IV.

WITHHOLDING OBJECTIONS TO CLOSING ARGUMENT
Of like import is Johnson's claim that his trial counsel were ineffective because they asked the trial judge to permit them to withhold objections to the state's argument until its completion and outside the presence of the jury. This clearly was a tactical decision of counsel. They, of course, knew they had the right to object whenever an improper argument was made. The very fact they made this request to the court evinced an awareness this right. Rather than risk offending the jury by objecting during argument, they asked permission to withhold objection and make it outside the presence of the jury. We criticized this sort of practice because when an improper argument was in fact made, it did not give the circuit judge the opportunity to correct it promptly upon objection by opposing counsel.
A conscious choice of trial strategy by defense counsel which proves unfortunate is not to be equated with incompetency. Roe v. State, 95 Wis.2d 226, 290 N.W.2d 291 (1980); State v. Baker, 169 W. Va. 357, 287 S.E.2d 497 (1982). Moreover, in our original opinion we found that the state did not make a prejudicial argument.

V.

FAILURE TO RAISE INVALIDITY OF 1963 CONVICTION
Johnson's claim that his counsel were ineffective for failing to inquire into the invalidity of 1963 conviction ignores the fact that Johnson did not take the stand in the sentencing phase of his trial to assert his innocence of the New York conviction, overlooks Johnson's failure to assert his innocence in the pro se document he filed with this Court on direct appeal, and disregards his counsel's failure to assert it in his appeal to this Court or in his petition for certiorari before the U.S. Supreme Court. He filed no such petition urging us to consider this issue as an additional assignment of error to those filed by his counsel.

VI.

REMAINING INEFFECTIVE ASSIGNMENTS
The remaining complaints Johnson makes of his trial counsel are a litany of Monday morning quarterbacking, attempts to again litigate issues decided, and assertions outside the record. All these fall far short of demonstrating his counsel were not reasonably effective.
The record in this case reveals that two dedicated, assidious trial attorneys did the best they could to defend Johnson. Had the facts which pointed to Johnson's guilt not been overwhelming, his attorneys, no *1342 doubt, would have fared much better. In addition, the circuit judge, a jurist renowned for his patience, kindness and forbearance, more than lived up to his reputation in trying this case. No practicing attorney could hope for more consideration from a trial judge than these attorneys received in this case.
It is true we criticized defense counsel in our decision affirming Johnson's conviction for their manner of requesting a continuance, and by their request to withhold objections to the state's closing argument until its conclusion. But there was nothing about our comments to intimate that they harmed Johnson in doing so. To hold that Johnson's trial counsel, in this case, from this record, lacked that degree of competency guaranteed by the Sixth Amendment would make the Sixth Amendment virtually impossible to abide by. No rational mind can conceive of such a proscriptive constitutional requirement as a condition precedent to the validity of a criminal conviction.
The jury in this case believed that Johnson stabbed a highway patrolman in the back and instructed another to shoot him with the patrolman's own gun. Their verdict was supported by overwhelming evidence. This officer was carrying out his duty in a peaceful manner, and posed no physical threat to Johnson or any of his companions. Civilized society depends upon peace officers for its survival. Such a murder can be equated with treason.
In his motion for post-conviction relief, Johnson asserts assignments XII, XVIII and XXIII which he failed to raise at trial or on the direct appeal. Having failed to raise them at trial or upon appeal, Johnson waived his right to assert them in his motion for post-conviction relief. Miss. Code Ann. § 99-39-21 (Supp. 1985); Irving v. State, 498 So.2d 305, 311 (Miss. 1986); Mann v. State, 490 So.2d 910, 911 (Miss. 1986); Evans v. State, 485 So.2d 276, 280 (Miss. 1986); Dufour v. State, 483 So.2d 307, 308 (Miss. 1985).
Johnson also asserts assignments III, IV, V, VI, VIII, IX, XI, XIII, XVI, XVII, XIX, XXI, XXII, XXIV and XXV, which were considered and addressed by us on the direct appeal of his case. Consequently, these assignments are res judicata and cannot be raised again. Miss. Code Ann. § 99-39-21 (Supp. 1985); Irving v. State, supra; Evans v. State, supra.
DENIED AND WEDNESDAY, JULY 22, 1987, IS SET AS THE DATE FOR EXECUTION OF THE SENTENCE AND INFLICTION OF THE DEATH PENALTY IN THE MANNER PRESCRIBED BY LAW.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, ANDERSON and GRIFFIN, JJ., concur.
ROBERTSON, PRATHER and SULLIVAN, JJ., dissent.
ROBERTSON, Justice, dissenting:

I.
In a question begging opinion considering a point of first impression in the administration of this state's capital sentencing system, the majority today denies Samuel Bice Johnson post-conviction relief. It does so contrary to reason and fairness. With respect for my colleagues, I dissent.

II.
The point arises from the order of the Court of Appeals of New York dated March 24, 1987, in which that court vacated and held for naught Johnson's April 9, 1963, conviction of assault, second degree with intent to commit rape, first degree rendered by the Monroe County Court of New York. We may take it that Johnson's 1963 conviction as of the moment is absolutely void and of no further force and effect. Our review of Johnson's capital murder trial in this state reflects that the 1963 conviction was proved by the prosecution and successfully  and argued vigorously  as an aggravating circumstance, compelling the conclusion that Johnson should be given the death sentence. Miss. Code Ann. § 99-19-101(5)(b) (Supp. 1986). The jury in fact found this as one of the aggravating circumstances, to-wit:

*1343 That the defendant, Samuel Johnson, was previously convicted of a felony involving the use or threat of violence to the person of another.
Today, that prior conviction having been declared a legal nullity, the majority begins by holding Johnson's claim "procedurally barred," adding yet another dubious chapter to this Court's recent and illicit romance[1] with procedural bars. The majority's point, as I understand it, is that, by waiting until after his 1963 conviction had been vacated before asserting any claim for relief, Johnson waived any rights he may have had in the premises.
To my mind, the opposite conclusion follows. Johnson had no basis for the claim he asserts until he obtained the order of March 27, 1987, vacating his 1963 New York conviction. Had he raised the point prior to March 24, 1987, we would no doubt have dismissed it out of hand and, consistent with the temper of the time, would probably now hold the claim barred by res judicata.
In our only consideration heretofore of the procedure by which today's point ought be raised, Phillips v. State, 421 So.2d 476, 482-83 (Miss. 1982), we held that
[T]he proper challenge to such a defective conviction lies in a separate action brought expressly for that purpose.
421 So.2d at 482.
Phillips arose in the context of an attack upon a prior conviction which had been used for enhancement of sentence under our habitual offender statute. Miss. Code Ann. § 99-19-81 (Supp. 1982). The Court held that a defective conviction was voidable, not void, and declared further that until such time as the conviction was judicially vacated in a separate proceeding, it could be used for habitual offender purposes. The Court then repeated that, rather than raising the point at the sentencing phase of the habitual offender action, the defendant's remedy was a separate post-conviction action which, if successful, would no doubt then be the occasion for relief from his sentence as a habitual offender. Phillips, 421 So.2d at 483. The same rationale applies here.

III.
The majority next states that Johnson's death sentence should not be disturbed because, even should the prior conviction aggravating circumstance be eliminated, the jury found two other aggravating circumstances which remain undisturbed.[2] The majority then misreads Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Stephens considers only the federal constitutional question. It holds a death sentence not constitutionally infirm by reason of the invalidity of one of several statutory aggravating circumstances found by a jury. The majority's citation to Stephens begs today's question, for we are confronted with whether as a matter of state law the vitiation of one of the aggravating circumstances found by the jury affords Johnson relief from his death sentence and, if so, what form that relief should take. Stephens merely sets minimal constitutional limitations and addresses in no way the question we ought to confront today.

IV.
One more point need be made before proceeding to the merits of today's state law question. The majority takes a swipe at the New York action suggesting that the Court of Appeals' March 24, 1987, order should be given less than full faith and credit. We are told that the March 24, 1987, proceedings were "less than adversarial." The point is disingenuous. For starters, I wonder if we would apply this approach in the converse situation. Where prior convictions have resulted from guilty *1344 pleas, would we say that those proceedings were less than adversarial and therefore give no credit to those conviction as aggravating circumstances. I think not. Further, I am confident the New York Court has displayed no greater penchant for vacating 25-year-old convictions than has this Court. Both pre- and post-Cardozo, the Court of Appeals of New York has enjoyed a reputation as one of the nations premiere state courts. I am not for a moment prepared in indulge in the cynical assumption that the New York Court did less than its duty when it ordered Johnson's 1963 conviction vacated.

V.
These things said, we confront a novel question. Where a previous conviction is proved as an aggravating circumstance, Miss. Code Ann. § 99-19-101(5)(b) (Supp. 1986), what is the impact upon a subsequent death sentence where thereafter the "aggravating" prior conviction is vacated?[3]
The point has been addressed, albeit obliquely, in two arguably analogous contexts. First, as indicated above, there is the case of Mississippi's habitual offender statutes. Miss. Code Ann. §§ 99-19-81 and -83 (Supp. 1986). The Phillips case discussed above considered an attack upon one of the two prior convictions which had been relied upon by the prosecution in seeking enhanced punishment. Phillips makes clear that the fact that the prior conviction is under attack affords the defendant no relief. The logic of the opinion, however, is quite unmistakable: should the prior conviction ultimately be set aside, the defendant would then be entitled to relief from his enhanced sentence.
No resort to a harmless error analysis would be made in such case, for proof of the prior convictions under Section 99-19-81 or 99-19-83, as the case may be, automatically results in enhanced punishment. Assuming vacation of a prior conviction leaves the defendant with only one prior conviction within the meaning of the habitual offender statutes, it would follow as a matter of law that the defendant would be entitled to have his sentence reduced to that provided for the underlying offense without enhancement. Phillips, therefore, suggests that Johnson may be entitled to relief from his death sentence.
On the other hand, as a matter of the law of evidence, we have for years held that a defendant could be impeached by a prior felony conviction even though his previous conviction was at the time pending on appeal. And, to be sure, Nicholson v. State, 254 So.2d 881, 883-84 (Miss. 1971) finds no error in allowing such impeachment, even though the prior conviction is later reversed.[4] 254 So.2d at 884. One may search the Nicholson opinion in vain for any reason why this result should obtain. The mere fact that a defendant's conviction of a previous offense is treated as final, though on appeal, begs the question of the effect to be given that prior conviction should it be reversed. Nicholson makes quite clear that
after the conviction has been reversed it cannot be used for impeachment purposes until the defendant is again convicted.
254 So.2d at 884.
It would seem to follow upon ordinary reasoning that the reversal of the impeaching prior conviction should have the same effect on a pre-reversal trial.
*1345 My thought regarding the impeachment via conviction on appeal issue is that the prosecution, or any other party so using such a prior conviction, proceeds at its own risk. If the prior conviction on appeal should remain undisturbed  and that is certainly what happens in the overwhelming majority of cases, there is no infirmity in any new conviction. Where, however, the Nicholson situation arises, that is, where the impeachment conviction is later reversed, the structure of the argument would seem to become one of whether the harmless error rule applies. I have come to prefer a recent articulation of that rule, i.e., does the error at trial undermine confidence in the outcome? See Malone v. State, 486 So.2d 367, 368 (Miss. 1986).
In one sense the case at bar falls between the habitual offender situation considered in Phillips and the impeachment context of Nicholson. The prior conviction is certain to have an adverse impact upon one tried under the habitual offender statute. The impact of a prior conviction in an impeachment context is far more problematic. In the case at bar, we simply have no way of ascertaining with confidence whether the prior conviction was a significant factor in the jury's determination that Johnson should suffer the penalty of death. The jury was instructed at the penalty phase trial that the prior conviction was one aggravating circumstance it could consider. The prosecuting attorneys certainly argued that this aggravating circumstance was one that merited the death penalty. The "age" on the 1963 conviction could cut either way. On the one hand, the jury might have considered it remote and therefore given it little credit. On the other hand, the fact that Johnson had been involved in a violent crime in 1963 may have led others rationally to perceive that his penchant for violence had spanned two decades, his behavior beyond correction or reformation. We simply don't know.
Because of these uncertainties  and in the context of the fact that Samuel Bice Johnson's life is at stake  the majority quite correctly eschews rejection of Johnson's claim on a harmless error basis. Such is consistent with the numerous cases wherein we recognize that sentences of death are qualitatively different in severity from any other that the defendant is to be given the benefit of the doubt when questions of prejudicial impact arise. See, e.g., Fisher v. State, 481 So.2d 203, 211 (Miss. 1985); Jones v. State, 461 So.2d 686, 690 (Miss. 1984); Billiot v. State, 454 So.2d 445, 455 (Miss. 1984); Neal v. State, 451 So.2d 743, 750 (Miss. 1984); Williams v. State, 445 So.2d 798, 810-11 (Miss. 1984); Laney v. State, 421 So.2d 1216, 1217 (Miss. 1982); Irving v. State, 361 So.2d 1360, 1363 (Miss. 1978). The majority manages, nevertheless, to deny Johnson's petition.

VI.
These things said, in my view Johnson is entitled to relief. He has presented this Court with a certified copy of the order of the Court of Appeals of New York of March 24, 1987, sufficient that we should hold that as a matter of law that he has proved the factual basis of his post-conviction claim. Past that, the effect of the vitiation of his 1963 conviction as a matter of law for the reasons set forth above, I would hold that vitiation of Johnson's 1963 New York conviction undermines confidence in the outcome of the penalty phase of his capital murder trial. I do not see how in candor the contrary may be contended. Accordingly, I would vacate the sentence of death imposed upon Johnson and restore the case to the active docket of the Circuit Court for a new trial on the question of sentence only.
PRATHER and SULLIVAN, JJ., join in this opinion.
NOTES
[1] Johnson was represented in his trial by Gerald Diaz and Gregory L. Harper of the Jackson Bar; on appeal to this Court by Kenneth J. Rose of the Atlanta Bar; in his petition to the United States Supreme Court by Clive A. Stafford Smith of the Atlanta Bar and in his present petition by Clive A. Stafford Smith of the Atlanta Bar and Laurence T. Sorkin and Anthony Paduano of the New York Bar.
[1] My view of the seamier side of this romance appears in Evans v. State, 441 So.2d 520, 531-33 (Miss. 1983) (Robertson, J., dissenting) and need not be repeated here. See also Wheat v. Thigpen, 793 F.2d 621, 626-27 n. 5 (5th Cir.1986).
[2] One of these is the highly problematic "the capital murder was especially heinous, atrocious and cruel." See Wiley v. State, 484 So.2d 339, 358-60 (Miss. 1986) (Robertson, J., concurring) and Jones v. State (Miss. No. Dp-60, dec. Jan. 28, 1987) (Robertson, J., concurring) (not yet reported).
[3] The point was before us in West v. State, 463 So.2d 1048 (Miss. 1985). At the sentencing phase of West's trial, the prosecution had proved as aggravating circumstances two prior murder convictions in Georgia appeals from which were then pending. After West had been sentenced to die in Mississippi, the Georgia convictions were reversed. West v. State, 252 Ga. 156, 313 S.E.2d 67 (1984). We subsequently reversed West's conviction and sentence by reason of error in the guilt phase of his trial and, thus, never reached today's point which would have affected only the sentencing phase.
[4] The majority's citations to Young v. State, 425 So.2d 1022 (Miss. 1983) and Milstid v. State, 347 So.2d 1319 (Miss. 1977) are without force or effect, for in neither of those cases had there been a reversal or vacation of the prior conviction used for impeachment.