518 So.2d 903 (1987)
Charles Lewis BURR, Appellant,
v.
STATE of Florida, Appellee.
No. 71234.
Supreme Court of Florida.
December 10, 1987.
Rehearing Denied February 10, 1988.
*904 Steven L. Seliger, Quincy, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard E. Doran and Elizabeth Masters, Asst. Attys. Gen., and William N. Meggs, State Atty. and Raymond L. Marky, Asst. State Atty., Tallahassee, for appellee.
PER CURIAM.
Charles Burr, under death warrant, appeals to this Court from the denial of his motion filed pursuant to rule 3.850 of the Florida Rules Of Criminal Procedure. He requests relief in the nature of a stay of execution, as well as a new trial and sentencing proceeding. We have jurisdiction, art. V., § 3(b)(1), Fla. Const., and affirm the judgment of the trial court.
Burr was convicted on June 11, 1982, of first degree murder and robbery with a firearm. Following a jury recommendation of life, the trial court overrode the jury and imposed a sentence of death on Burr. On February 14, 1985, this Court affirmed both the conviction and the sentence, Burr v. State, 466 So.2d 1051 (Fla. 1985), and issued its mandate on June 3, 1985. Burr filed a timely petition for writ of certiorari in the United States Supreme Court which was denied on October 7, 1985. Burr v. Florida, 474 U.S. 879, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985). Following the signing of a death warrant by Governor Martinez, Burr filed this 3.850 motion for post-conviction relief on September 23, 1987 in the trial court. That court denied the motion because it was not timely filed, ruling that under rule 3.850 of the Florida Rules of Criminal Procedure, a motion for relief under that rule must be filed within *905 "two years after the judgment and sentence become final." Fla.R.Crim.P. 3.850. The trial court further held that the judgment and sentence became final upon the issuance of the mandate by the Florida Supreme Court. However, it was the intent of this Court, when it promulgated the rule, that the time should not begin to run until the writ of certiorari filed with the United States Supreme Court is finally determined. Therefore, because it was filed less than two years after the United States Supreme Court denied certiorari in this case, this rule 3.850 motion is timely filed.
The trial court, anticipating that this Court may elect to reach the merits of the motion, so ruled on those merits. The court denied the motion, ruling that some of the arguments were procedurally barred, and some were devoid of merit. We agree. Those issues raised here that are procedurally barred[1] include sufficiency of evidence, racial discrimination in the grand jury foreperson selection process, collateral crimes evidence, prosecutorial misconduct in closing argument, and improper override of the jury's recommendation of life. These issues have been addressed, and disposed of on Burr's direct appeal to this Court, and are thus not cognizable for review here. With the exception of the collateral crimes issue, no new information has been made available to this Court which would warrant a revisitation of those issues.
However, Burr has argued that his subsequent acquittal of one of the crimes to which witnesses testified at his trial, and the nolle pros of another renders the evidence of those acts inadmissible. This Court has held that evidence of collateral offenses which have been nolle prossed is admissible. Holland v. State, 466 So.2d 207 (Fla. 1985). As to the subsequent acquittal, clearly, at the time the Williams[2] rule evidence was admitted, it was not error to do so. This much had been settled on direct appeal. There is no reason to suggest that the subsequent acquittal changes that admissibility subsequent to the trial. This Court will not render evidence retroactively inadmissible.
Burr raises one issue which is not procedurally barred. He claims that trial counsel was ineffective for failing to object to allegedly inflammatory, unfairly prejudicial, and improper closing argument. We held on direct appeal that Burr's allegation that the prosecutor's closing argument was invalid was waived due to his attorney's failure to timely object to the statements made by the prosecutor. The record reveals that none of the statements, nor the combined effect of them warranted the granting of a new trial. It is not clear that the statements were even objectionable. Indeed, the one objection raised by counsel was correctly denied as the comments were fair comment upon the evidence, and not unduly inflammatory. 466 So.2d at 1054. It cannot be said that, under the guidelines of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), counsel was defective to the point of depriving Burr of the effective assistance of counsel.
We hold that while the rule 3.850 motion was timely filed, it was devoid of merit. Accordingly, we affirm the circuit court's denial of the rule 3.850 motion on its merits, and dissolve the stay of execution previously entered by this Court.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, GRIMES and KOGAN, JJ., concur.
SHAW, J., concurs in result only with an opinion.
BARKEIT, J., dissents with an opinion.
*906 SHAW, Justice, concurring in result only.
I do not agree with the majority's treatment of Florida Rule of Criminal Procedure 3.850 and petitions for writs of certiorari before the United States Supreme Court (USSC).
There is no right of appeal to the USSC on state criminal convictions. There is a right to petition for a writ of certiorari provided state appellate remedies have been exhausted and a state court of last resort has entered a final judgment. The petition may address federal questions which have been timely and properly raised in the state courts. See Rules of the United States Supreme Court, Rule 21. Thus, our affirmance of convictions and death sentences is a final judgment, which is a prerequisite to seeking certiorari review in the USSC.
Post-conviction relief, on the other hand, is an entirely separate proceeding. It cannot be based on issues which were not properly preserved on direct appeal or which could have or should have been raised on direct appeal. Rule 3.850. Thus, by definition, a petition for state post-conviction relief must present issues for which state remedies have not been exhausted and for which there is no right to petition the USSC for certiorari review. A prisoner is entitled to petition the USSC for relief on issues which have been timely and properly raised and on which a final judgment has been obtained from a state court of last resort. Simultaneously, the prisoner is entitled to seek such state post-conviction relief as he is entitled to under rule 3.850. The issues presented in the respective petitions are separate and independent of each other. A prisoner, for example, might seek relief in the USSC from the imposition of the death penalty while simultaneously seeking post-conviction relief in the state courts from the conviction itself. There is no jurisdictional bar to such simultaneous proceedings. The question of whether one proceeding should be temporarily abated or both pursued is one for the sound discretion of each court. Conversely, there is no reason to toll the mandatory requirement of rule 3.850 that post-conviction relief be initiated within two years of the final judgment of the state court of last resort. This limitation of two years is not based on the proposition that such petitions require two years to prepare; the limitation is based on the proposition that two years is sufficient time for a prisoner to become aware of any potential post-conviction issues and to bring those issues to the attention of the trial court while the issues are reasonably fresh. I can see no reason why we should not follow the plain language of rule 3.850 nor why we should establish a special rule that our affirmance of death sentences on direct appeal is a final judgment for purposes of seeking certiorari review in the USSC but is not a final judgment for purposes of state post-conviction relief.
The evidence here on previous crimes was probative on the aggravating factors of cold, calculated and premeditated and witness elimination. This evidence was admissible under section 921.141(1), Florida Statutes (1981), which provides in pertinent part:
In the [sentencing] proceeding, evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (5) and (6). Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements.
Thus, there was no need to rely on the Williams rule[*] and the state could not be held to the criteria for the admission of similar fact evidence even if we assume that the evidence did not meet the Williams rule criteria.
*907 BARKETT, Justice, dissenting.
I believe petitioner is entitled to a new appeal because of the trial court's application of collateral crimes evidence during the sentencing phase of the trial. Concededly, the issue has only been raised as it relates to the guilt phase, and I disagree with the majority's conclusions in this regard. However, I am deeply troubled by the effect of this evidence on the sentence, find it contrary to Florida and federal law, and cannot see the sense in waiting for a formal petition for writ of habeas corpus to argue a point I believe should have been argued on direct appeal. Thus, I would call for additional briefs and decide the issue at this time.
The death penalty was imposed in this case because the trial judge found three aggravating factors that, in his mind, rendered the jury's recommendation of life imprisonment unreasonable. Two of these factors were derived from evidence of three collateral crimes (although the defendant was acquitted of one and the state nolle prossed another).
The Williams rule was established not to prove propensity but to prove identity. The sole purpose of allowing evidence of collateral crimes is to show that the defendant indeed is the perpetrator of the charged offense. We accept the inherent risk of prejudice that this type of evidence creates by balancing that prejudice against the relevance of proving that the defendant committed the crime.
In the conventional use of the Williams rule, the state is not relieved of its obligation to prove beyond a reasonable doubt the facts and circumstances of the crime charged. To permit aggravating factors to be supported by Williams rule evidence not only expands the rule beyond its original purpose, but completely relieves the state of its burden of proving the existence of aggravating factors. Under this novel approach, aggravating factors could be proved merely by showing that they existed in collateral crimes committed by the accused, whether or not they actually existed in the crime charged in the indictment.
I do not believe this was a conscious holding of this Court on the direct appeal, since it was never argued or addressed. Moreover, I do not believe this is consistent with the requirement of proving aggravating circumstances beyond a reasonable doubt.
In this case, the judge found the aggravating factors of witness elimination and cold, calculated and premeditated murder based predominantly, if not exclusively, on the Williams rule evidence presented during the guilt phase of the trial. I recognize that the opinion on direct appeal, 466 So.2d at 1054, suggests the existence of other evidence sufficient to support these aggravating factors. Contrary to that view, I find that the record itself contains no such evidence. The only testimonial evidence linking the defendant to the crime was that of Domita Williams. Her testimony, however, was silent as to any evidence pertinent to aggravating factors. She confined her account to the fact that she was outside when the defendant entered and heard a shot while he was inside. The only evidence pertaining to the manner in which the crime was committed came from the medical examiner and falls far short, in my opinion, of the requisite certainty:
QUESTION: Am I correct in stating that you really cannot state with certainty the position of the victim and the person who fired the weapon at the time of the shot?
ANSWER: I think I can be fairly certain of the position of the weapon in relation to the victim's head. I can't be certain of the position of the victim's head at the time of the shooting.

QUESTION: And it was your testimony earlier that you really couldn't say whether the victim had been lying on the floor or whether he had fallen to the floor?
ANSWER: I couldn't say with certainty either way. However, it was my impression from the observations that I made that he probably had been shot while he was on the floor.
QUESTION: Why is that?

*908 ANSWER: Because of the position of the body as I observed it and the relationship of the gun to the body. I realize that that still doesn't tell me the exact position of the body when it was shot, but from all observations that I made, I have certainly found it consistent with his having been shot while he was on the floor.
(Emphasis added.) One cannot say that this establishes beyond a reasonable doubt that the motive for the murder encompassed the elimination of a witness.
Nor does this evidence support the trial court's conclusion that this murder was cold, calculated and premeditated within the meaning of our law. See Rogers v. State, 511 So.2d 526, 533 (Fla. 1987) (receding from Herring v. State, 446 So.2d 1049, 1057 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984)). This aggravating factor can only be proved by evidence of a careful plan or prearranged design to effect the murder. Id Even when there is direct evidence of premeditation, the state must prove beyond a reasonable doubt that petitioner calmly deliberated or reflected on the decision to kill prior to the actual act of killing to support this aggravating factor. Our cases make clear that this aggravating factor does not apply where the evidence reasonably is susceptible to some other conclusion than that the murder was accomplished in a calculated manner or where there simply is no evidence as to the defendant's state of mind prior to the killing. Peavy v. State, 442 So.2d 200, 202 (Fla. 1983) (murder that occurred during burglary and robbery is susceptible to other conclusions than finding it was committed in cold, calculated, and premeditated manner). See Thompson v. State, 456 So.2d 444, 445-47 (Fla. 1984) (no evidence to set murder apart from usual holdup murder).
Moreover, during the penalty phase, the only material facts in issue are the existence of aggravating and mitigating factors provided by law. The aggravating factors are strictly limited by section 921.141, Florida Statutes. Under section 921.141(5), only one aggravating factor exists that in any way concerns collateral criminal activity, and it expressly is limited to prior convictions of felonies involving violence. See § 921.141(5)(b). To hold that a judge can consider unconvicted criminal conduct in reaching a sentence is to permit the weighing of nonstatutory aggravating factors, contrary to our law. See Elledge v. State, 346 So.2d 998, 1002-03 (Fla. 1977).
Lastly, the Supreme Court has stated that the death penalty must "serve both goals of measured, consistent application and fairness to the accused," Eddings v. Oklahoma, 455 U.S. 104, 111, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982), and must "be imposed fairly, and with reasonable consistency, or not at all." Id. at 112, 102 S.Ct. at 875. Imposing the death penalty in this case will be neither consistent, nor measured, nor fair. Indeed, it will not even be proportional under the considerable body of Florida case law arising from Tedder v. State, 322 So.2d 908 (Fla. 1975). See, e.g., Fead v. State, 512 So.2d 176 (Fla. 1987); Ferry v. State, 507 So.2d 1373 (Fla. 1987).
There is no question in my mind that if the direct appeal were to be considered today, the defendant would not be facing the electric chair. In light of our present case law, including that on aggravating circumstances, I cannot agree that the imposition of the death penalty in this case is either proportional or fair. It is apparent to me that errors have occurred in these proceedings, both at trial and on appeal, that we now should correct in the interests of justice and proportionality.
I respectfully dissent.
NOTES
[1] The circuit court found that because these issues should have been, and indeed were, litigated on direct appeal, they are not cognizable for review on a rule 3.850 motion.
[2] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[*] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).