No. 89–1320. FLORIDA v. BURR. Sup. Ct. Fla. Motion of respondent for leave to proceed *in forma pauperis* granted. Certiorari granted, judgment vacated, and case remanded for further consideration in light of *Dowling* v. *United States,* 493 U. S. 342 (1990). JUSTICE BLACKMUN dissents.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

For the reasons stated by JUSTICE STEVENS, I agree that the judgment of the Florida Supreme Court should not be vacated.

In any event, adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, see *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would direct that the proceedings on remand be circumscribed such that the State may not impose the death sentence.

JUSTICE STEVENS, dissenting.

Respondent was convicted of first-degree murder and robbery with a firearm. To establish respondent's identity, at the guilt phase of the trial the prosecution relied on "collateral crimes evidence"—three witnesses testified that respondent had committed similar crimes *after* the fatal shooting involved in this case. At the sentencing phase of his trial, the prosecutor offered no additional evidence; the jury recommended that respondent be sentenced to imprisonment for life with no possibility of parole for 25 years.

The trial judge overrode the jury's recommendation and sentenced respondent to death. He unequivocally stated that his decision to impose the death sentence was based on the collateral crimes evidence that had been received for the limited purpose of proving respondent's identity at the guilt phase of the trial.[1]

Respondent was later tried and acquitted of one of the collateral crimes, and the State abandoned its prosecution of a second. Thereafter, in state collateral-review proceedings, respondent sought to set aside his conviction on the ground that the subsequent acquittal of one of the collateral crimes demonstrated that the evidence had been improperly admitted.[2] Over the dissent of Justice Barkett, the Florida Supreme Court rejected that conten-

---

[1] See Pet. for Cert. 34–35, quoting Tr. 319–320. He observed "'that if the Williams Rules testimony admitted during this trial is found to have been improperly admitted then the sentence I impose today will be academic.'" The "Williams Rul[e]" refers to the rule announced in *Williams* v. *State*, 110 So. 2d 654 (Fla.), cert. denied, 361 U. S. 847 (1959), a case holding that evidence of other crimes is admissible in a criminal trial if relevant to prove anything other than the bad character of the defendant or his propensity to commit the crime charged. In a later case, *State* v. *Perkins*, 349 So. 2d 161 (1977), the Florida Supreme Court held that the *Williams* rule did not apply to evidence of collateral crimes for which a defendant had been acquitted.

[2] If the acquittal had *preceded* the trial in this case, the evidence would have been inadmissible under Florida law. See *State* v. *Perkins*, *supra.*

tion; it held that evidence that was properly received at the time it was offered had not been rendered "retroactively inadmissible."[3] In her dissent, Justice Barkett did not directly challenge that conclusion. She contended, however, that the State Supreme Court should have considered the propriety of the trial judge's reliance on that evidence at the penalty phase of the trial even though respondent's counsel had not squarely raised that point. She wrote:

"I believe petitioner is entitled to a new appeal because of the trial court's application of collateral crimes evidence during the *sentencing* phase of the trial. Concededly, the issue has only been raised as it relates to the *guilt* phase, and I disagree with the majority's conclusions in this regard. However, I am deeply troubled by the effect of this evidence on the sentence, find it contrary to Florida and federal law, and cannot see the sense in waiting for a formal petition for writ of habeas corpus to argue a point I believe should have been argued on direct appeal. Thus, I would call for additional briefs and decide the issue at this time.

"The death penalty was imposed in this case because the trial judge found three aggravating factors that, in his mind, rendered the jury's recommendation of life imprisonment unreasonable. Two of these factors were derived from evidence of three collateral crimes (although the defendant was acquitted of one and the state *nolle prossed* another).

"The *Williams* rule was established not to prove propensity but to prove identity. The sole purpose of allowing evidence of collateral crimes is to show that the defendant indeed is the

---

[3] "With the exception of the collateral crimes issue, no new information has been made available to this Court which would warrant a revisitation of those issues.

"However, Burr has argued that his subsequent acquittal of one of the crimes to which witnesses testified at his trial, and the *nolle pros* of another renders the evidence of those acts inadmissible. This Court has held that evidence of collateral offenses which have been *nolle prossed* is admissible. *Holland* v. *State*, 466 So. 2d 207 (Fla. 1985). As to the subsequent acquittal, clearly, at the time the *Williams* rule evidence was admitted, it was not error to do so. This much had been settled on direct appeal. There is no reason to suggest that the subsequent acquittal changes that admissibility subsequent to the trial. This Court will not render evidence retroactively inadmissible." *Burr* v. *State*, 518 So. 2d 903, 905 (1987) (footnote omitted).

perpetrator of the charged offense. We accept the inherent risk of prejudice that this type of evidence creates by balancing that prejudice against the relevance of proving that the defendant committed the crime.

"In the conventional use of the *Williams* rule, the state is not relieved of its obligation to prove beyond a reasonable doubt the facts and circumstances of the crime charged. To permit aggravating factors to be supported by *Williams* rule evidence not only expands the rule beyond its original purpose, but completely relieves the state of its burden of proving the existence of aggravating factors. Under this novel approach, aggravating factors could be proved merely by showing that they existed in collateral crimes committed by the accused, whether or not they actually existed in the crime charged in the indictment.

"I do not believe this was a conscious holding of this Court on the direct appeal, since it was never argued or addressed. Moreover, I do not believe this is consistent with the requirement of proving aggravating circumstances beyond a reasonable doubt.

"In this case, the judge found the aggravating factors of witness elimination and cold, calculated and premeditated murder based predominantly, if not exclusively, on the *Williams* rule evidence presented during the guilt phase of the trial.

.　　　.　　　.　　　.　　　.

"Moreover, during the penalty phase, the only material facts in issue are the existence of aggravating and mitigating factors provided by law. The aggravating factors are strictly limited by section 921.141, Florida Statutes. Under section 921.141(5), only one aggravating factor exists that in any way concerns collateral criminal activity, and it expressly is limited to prior convictions of felonies involving violence. *See* § 921.141(5)(b). To hold that a judge can consider *unconvicted* criminal conduct in reaching a sentence is to permit the weighing of nonstatutory aggravating factors, contrary to our law. *See Elledge v. State,* 346 So. 2d 998, 1002–03 (Fla. 1977)." *Burr v. State,* 518 So. 2d 903, 907–908 (1987).

While respondent's petition for certiorari was pending in this Court, we decided a case with somewhat similar facts. *Johnson* v. *Mississippi*, 486 U. S. 578 (1988). In that case a death sentence had been imposed on the basis of three aggravating circumstances, one of which was a prior New York conviction of a violent felony. In state collateral proceedings, Johnson had challenged his death sentence on the ground that the New York Court of Appeals had subsequently held that the prior conviction was invalid. The Mississippi Supreme Court, over the dissent of three justices, rejected that contention holding, in effect, that the subsequent invalidation of the felony conviction had not made the evidence retroactively inadmissible. See *Johnson* v. *State*, 511 So. 2d 1333 (1987). We reversed, concluding that the death sentence could not stand when "the jury was allowed to consider evidence that has been revealed to be materially inaccurate." 486 U. S., at 590.

Our holding in *Johnson* did not directly resolve the issue presented in Burr's pending petition for certiorari; in *Johnson* the only evidence of the collateral crime that had been received was a certified copy of the invalid conviction, whereas in Burr's trial a witness had testified about the conduct that was later made the basis of an unsuccessful criminal prosecution. This Court nevertheless concluded that there was enough similarity between the cases to justify a remand of the *Burr* case to the Florida Supreme Court to reconsider its judgment in the light of our opinion in *Johnson*. See *Burr* v. *Florida*, 487 U. S. 1201 (1988).

As the Court itself demonstrates by its action today, an order remanding a case to a lower court does "not amount to a final determination on the merits," *Henry* v. *City of Rock Hill*, 376 U. S. 776, 777 (1964), but only a conclusion that an intervening decision is sufficiently analogous to make reexamination of the case appropriate. That action was proper after *Johnson* for three important and independent reasons. First, of course, is the paramount importance of reliability in the determination that death is the appropriate punishment in any capital case.[4] In *Johnson*, as

---

[4] "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special '"need for reliability in the determination that death is the appropriate punishment"' in any capital case. See *Gardner* v. *Florida*, 430 U. S. 349, 363–364 (1977) (quoting *Woodson* v. *North Carolina*, 428 U. S. 280, 305 (1976)) (plurality opinion). Although we have acknowledged that 'there can be "no perfect procedure for deciding in which cases governmental authority

in this case, that concern was implicated by a post-trial development that cast doubt on the reliability of evidence that played a critical part in the sentencing decision. *Johnson* made clear, what was apparent before, see *Zant* v. *Stephens*, 462 U. S. 862, 887–888, n. 23 (1983); *Gardner* v. *Florida*, 430 U. S. 349, 358–359, 362 (1977) (plurality opinion), that a death sentence cannot stand when it is based on evidence that is materially inaccurate. Second, because the case had not yet reached the stage of federal collateral review, it was obvious that its ultimate disposition would be expedited by giving the Florida Supreme Court the first opportunity to consider the impact of *Johnson;* a different disposition would almost certainly have generated additional collateral proceedings in both state and federal courts. Third, the arguments in Justice Barkett's dissenting opinion, which were based partly on Florida law and partly on federal law, were buttressed by our reasoning in *Johnson* and had not been expressly rejected by the State Supreme Court's opinion which focused on respondent's contention that the collateral crimes evidence was inadmissible at the guilt phase of his trial.

Following our remand in light of *Johnson,* the Florida Supreme Court denied Burr's request for a new trial, but vacated his sentence and remanded the case to the trial court for resentencing.[5] In the portion of its opinion discussing the validity of the conviction, the court stated that the evidence of the collateral act for which Burr received an acquittal "is inadmissible under *Johnson.*"[6] In another portion of its opinion, that may have rested exclusively on *Johnson* or may have also been predicated in part on the arguments set forth in Justice Barkett's earlier dissent, the court vacated the death sentence:

> "Our review of the record reveals that the state introduced no evidence at the sentencing phase beyond that established

---

should be used to impose death,"' we have also made it clear that such decisions cannot be predicated on mere 'caprice' or on 'factors that are constitutionally impermissible or totally irrelevant to the sentencing process.' *Zant* v. *Stephens*, 462 U. S. 862, 884–885, 887, n. 24 (1983). The question in this case is whether allowing petitioner's death sentence to stand although based in part on a reversed conviction violates this principle." *Johnson* v. *Mississippi*, 486 U. S. 578, 584–585 (1988).

[5] Because the original jury had recommended a life sentence, the State Supreme Court concluded that there was no need to empanel a new jury.

[6] 550 So. 2d 444, 446 (1989).

at the guilt phase. There was no evidence of two of the three aggravating factors other than the collateral crimes evidence. The United States Supreme Court held in *Johnson* that the eighth amendment requires a stringent review of death sentences based in part on improper aggravating circumstances.

"In overriding the jury recommendation of life, the trial judge found as aggravating circumstances that the murder was committed to avoid arrest; that it was committed during the course of a robbery; and, that it was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The aggravating factors of witness elimination to avoid arrest and cold, calculated, and premeditated were established almost entirely on the collateral crimes evidence. We cannot say, beyond a reasonable doubt, that the consideration of this evidence did not contribute to the sentence, particularly in light of the jury's recommendation of life.

. . . . .

"Nor can we determine whether the one improperly admitted instance of collateral conduct was determinative of the outcome." 550 So. 2d 444, 446 (1989) (footnotes omitted).

The court's holding left the trial judge who had heard all the evidence free to rely on the evidence of two of the three collateral crimes—even though that evidence had not been offered or received for the purpose of proving aggravating circumstances at the penalty hearing. Instead of allowing the new sentencing hearing to go forward, however, the Florida attorney general decided to request this Court to correct the state court's arguably improper application of *Johnson* to this case.[7]

The Court today accedes to that request, remanding the case once again to the Florida Supreme Court, this time in the light of our more recent decision in *Dowling* v. *United States*, 493 U. S. 342 (1990). Its action is ill advised for several reasons. First,

---

[7] The question presented by the State's certiorari petition reads as follows: "ON REMAND FROM THIS COURT IN *BURR* v. *FLORIDA*, [487 U. S. 1201] (1988), THE FLORIDA SUPREME COURT ERRONEOUSLY APPLIED *JOHNSON* v. *MISSISSIPPI*, [486 U. S. 578] (1988), IN VACATING THE DEATH SENTENCE AND ORDERING A NEW SENTENCING PROCEEDING." Pet. for Cert. i.

our opinion in *Dowling* sheds absolutely no light on the question whether a post-trial acquittal should render collateral crimes evidence inadmissible at a sentencing hearing in a capital case. *Dowling* merely decided, as a matter of federal law, that a pretrial acquittal did not render relevant collateral crimes evidence inadmissible at the guilt phase of a noncapital case. As a matter of state law, the Supreme Court of Florida several years ago reached a contrary (and in my opinion, a correct) conclusion on that issue. But, in any event, *Dowling* did not decide the admissibility of such evidence at the penalty phase of a capital case. Respect for this Court's legal acumen is not enhanced by asking a state court to reconsider a claim in the light of a patently irrelevant precedent.

Second, even if this Court's real purpose in remanding the case is to suggest that the state court may have extended *Johnson* beyond its precise holding, the action is nevertheless unwarranted because that extension is both completely consistent with the reasoning in *Johnson* and with the reasoning in relevant state-court cases. The state court's statement that evidence of the collateral act was "inadmissible under *Johnson*"—although not strictly accurate—was a reasonable application of that precedent, especially in light of the Florida rule that acquitted conduct is generally excepted from the rule allowing collateral crimes evidence to be used to establish identity. And, with respect to sentence, the state court's reliance on *Johnson* for the proposition that the death sentence could not stand when it was based on evidence that had been rendered unreliable was entirely correct. When a state supreme court, in compliance with our mandate, has applied an intervening decision in a permissible fashion, we should respect its decision even if we might detect a slight flaw in its opinion.

Third, the Court's action today can only prolong the termination of this litigation. I have previously noted the costs in litigation occasioned by the jury override system in those few States in which such a system is used. See *Schiro* v. *Indiana*, 493 U. S. 910, 914 (1989) (opinion respecting denial of certiorari).[8] That

---

[8] See also Mello, Taking *Caldwell* v. *Mississippi* Seriously: The Unconstitutionality of Capital Statutes That Divide Sentencing Responsibility Between Judge and Jury, 30 Boston College L. Rev. 283, 290 (1989) (noting that between two-thirds and three-fourths of all life overrides reviewed by the Florida Supreme Court have been vacated and remanded for imposition of a life sentence, resentencing, or retrial); Radelet, Rejecting the Jury: The Im-

delay is exacerbated by ill-advised decisions like this one. A prompt new sentencing hearing would have eliminated the basis for substantial attacks on respondent's sentence. That hearing has already been delayed by the attorney general's petition to this Court and, depending on the action the State Supreme Court may take after this second remand, may require further collateral proceedings in both the state and federal systems. The interest in avoiding unnecessary delay would surely be served by a prompt resentencing.

Finally, I must once again express my concern about the Court's unseemly use of its discretionary docket to provide assistance to the prosecution—particularly in capital cases. In this case, a jury that heard all of the evidence recommended against a death sentence, and the trial judge's contrary decision was based in part on testimony about a crime of which Burr was later acquitted. When one considers the fact that the State has not yet come forward with a response to the points made in Justice Barkett's dissent, it is pellucidly clear that the Florida Supreme Court acted wisely in ordering a new sentencing hearing. Of course, the state court may after reconsideration adhere to its decision remanding for resentencing, just as it might have adhered, with additional explanation, to its original decision upholding the sentence after we vacated for reconsideration in light of *Johnson*. There is no good reason, however, for making the state court go through the exercise. I remain firmly convinced that "although this Court now has the power to review decisions defending federal constitutional rights, the claim of these cases on our docket is secondary to the need to scrutinize judgments disparaging those rights." *Delaware* v. *Van Arsdall*, 475 U. S. 673, 697 (1986) (dissenting opinion). Surely the State's attenuated interest in enforcing a trial judge's decision to override a jury's recommendation against the imposition of the death sentence in a marginal case like this does not justify the summary action the Court has taken today.

I respectfully dissent.

position of the Death Penalty in Florida, 18 U. C. D. L. Rev. 1409, 1422–1424 (1985).