**Jack Ernest BAUGH, Petitioner,**

**v.**

**Michael P. LANE, Director, Dept. of Corrections; Steve McEvers, Warden, Logan Correctional Center, Respondents.**

**No. 88–3121.**

United States District Court, C.D. Illinois, Springfield Division.

Sept. 26, 1989.

Jack Ernest Baugh, Lincoln, Ill., pro se.

Douglas K. Smith, Asst. Atty. Gen., Springfield, Ill., for respondents.

## OPINION

RICHARD MILLS, District Judge:

Habeas corpus.

Relief denied on procedural grounds.

Baugh has moved for federal relief from his 1977 state court guilty plea and conviction for murder and unlawful use of weapons. The State of Illinois has responded to the petition, and Petitioner has replied to the response. Pursuant to Rule 8(a) of the rules governing 28 U.S.C. § 2254 cases, we have determined that an evidentiary hearing is not required in this case, because we further hold that Petitioner has waived any entitlement to federal habeas corpus relief through a procedural default.

Accordingly, the petition is denied and the case is dismissed.

## Factual and Procedural Background

The facts of this case and its procedural history are culled entirely from the petition and its accompanying exhibits. Along with the petition, Petitioner has filed excerpts from transcripts of several court proceedings, affidavits of several relatives, and letters from well-wishers and potential witnesses. Additionally, Respondent has filed complete transcripts of all the trial court hearings pertaining to Petitioner, save his sentencing.

The roots of this petition go back to the spring of 1977, when Jack Ernest Baugh resided with one Susan J. Hayes in East Peoria, Illinois. There, sometime in the evening on April 6, Ms. Hayes was murdered by means of a severe beating with some blunt instrument, possibly a cane. The police investigation focused on Baugh; the interest in Baugh stemmed as well from the fact that some 16 firearms were discovered during the investigation which apparently all belonged to Baugh—because he had a prior felony conviction, the guns placed him in violation of both state and federal law.

About a week after the murder Baugh surrendered to the police and was officially charged with Ms. Hayes' slaying. Baugh's counsel at the time he surrendered and at his arraignment and preliminary hearing was a Mr. Napoli; this attorney, however, had filed a limited entry of appearance stating that he would only represent Baugh through the preliminary hearing. Thus, following that hearing Attorney Napoli withdrew and the public defender was appointed on May 4, 1977. At some point following that, however, Mr. Napoli once again took the reins, and he represented Baugh at the time of the guilty plea on June 24, 1977.

Petitioner Baugh had been charged by the State of Illinois with four counts of murder and one count of unlawful use of weapons (3 blackjacks and 1 set of metal knuckles were also found at the scene of the murder). The guilty plea entered by Petitioner resulted from the state agreeing to dismiss three of the murder counts, leaving only one murder count and the unlaw-

ful use of weapons charge. The original plea and sentencing agreement called for a prison term of 20 to 40 years plus parole; the judge, however, rejected this plea without comment. The record reveals that "[a] brief recess was taken," following which the parties approached the judge with a nearly identical plea agreement which this time called for a 20 to 60 year period of incarceration, signed by Petitioner and both counsel. After expressly asking Petitioner if he had had time to review and consider both the original and the amended plea agreement, and also after being fully satisfied of the factual basis for the guilty plea, the judge accepted the plea agreement and entered a judgment of conviction on those charges. Petitioner was sentenced in accordance with the plea agreement on July 6, 1977, at which time he was also advised of his right to withdraw and to appeal his guilty plea.

The firearms discovered during the murder investigation were not forgotten; Petitioner's illegal possession of these was prosecuted in federal court concurrently with the state court proceeding. The United States charged Petitioner with 7 counts of violating 18 U.S.C. § 922(h), and on June 24, 1977, Petitioner pled guilty to those charges and agreed to be sentenced separately for each count. The total federal sentence came to 35 years, and this sentence ran concurrently with Petitioner's state sentence.

Petitioner never appealed his state court conviction, nor did he ever seek any other post-conviction remedy in the state courts. He did, however, appeal his federal conviction, and succeeded in getting 5 of the 7 counts vacated due to a defective plea agreement. *United States v. Baugh,* 787 F.2d 1131 (7th Cir.1986). As a result, Petitioner's federal incarceration period was substantially shortened; he has now served all his federal time, and his custody has been transferred to Illinois prison officials. Petitioner is currently incarcerated at Logan Correctional Center in Lincoln, Illinois.

The mandate vacating portions of Petitioner's federal conviction was entered on April 3, 1986. As previously noted, Peti-

tioner never sought any state review of his state conviction. The only other review of this conviction sought by Petitioner is the instant petition, filed with this Court almost 11 years following Petitioner's guilty plea and sentencing.

### The Petition

Petitioner's most vigorous argument in requesting that we set him free is that his guilty plea was not entered voluntarily. He claims first that he was not competent to plead guilty because from mid–April through June 22, 1977, while he was in custody pending his trial, he was given several drugs for nerve problems he was experiencing. Petitioner has submitted the affidavits of his mother, his two children, and his uncle, as well as his own, which in essence state that Petitioner's mental state was not normal during those time periods, and the affiants ascribe the abnormality to the drugs ingested. Additionally, Petitioner has submitted a letter from a doctor indicating that the drugs prescribed to Petitioner during that time might impair mental faculties.

Petitioner also claims that his plea was involuntary due to his lack of understanding of the charges, due to the lack of any factual basis for the plea, and due to the fact that he was not informed of the requisite mental state for a murder conviction and that he did not possess that mental state at the time he killed Ms. Hayes.[1] Petitioner further claims that he had insufficient time in which to consider the amended plea agreement after the Court rejected the first attempt, and that the plea was entered into on bad advice of counsel in that his attorney told him that he would be paroled within 10 years. In addition, Petitioner urges that his plea was involuntary due to incompetence of counsel; he claims that the federal sentence which was subsequently vacated demonstrates his attorney's incompetence, as do other incidents.

Petitioner also attacks his conviction on the basis that the Court deprived him of the right to counsel of his choice when it allowed Mr. Napoli to withdraw and appointed the public defender to represent Petitioner following his preliminary hearing. Finally, Petitioner also argues that he was denied his right to appeal; though he claims to have been of the understanding that Mr. Napoli would appeal the conviction, no such appeal was ever filed.

### Taking the Case

Our conclusion that the relief requested has been waived by Petitioner through his own procedural default is reached through an indirect route.

We begin with Respondent's assertion that this petition should be dismissed due to Petitioner's failure to exhaust state remedies in accordance with section 2254(b). Specifically, Respondent argues that state relief is available to by virtue of Ill.Rev. Stat. ch. 38, ¶ 122–1, Illinois' Post–Conviction Hearing Act, which opens the state courts' doors to claims of a substantial denial of federal constitutional rights during proceedings resulting in the claimant's conviction. Respondent notes that section 2254, by its own terms, requires that such state relief be exhausted prior to seeking federal assistance, and so this petition should now be denied.

■ We agree with Respondent that the claims raised in this petition would be cognizable in a Post–Conviction Hearing Act proceeding. Petitioner here failed to raise any of his claimed constitutional errors on direct appeal—in fact, one error claimed is that he was altogether denied his right to appeal. Hence, all of his claims would be presentable to an Illinois court because "[t]he Post–Conviction Hearing Act provides a separate remedy, the availability of which is not contingent upon exhaustion of any other remedy.... Thus, a party who

---

**1.** It should be emphasized that Petitioner does not deny a factual basis exists for a finding that he killed Ms. Hayes; instead, he argues only that he never intended to kill her. He admits that he severely beat the victim and caused her death, but in the petition he argues that the beating was done in a "blind rage" and his actions subsequent to beating Ms. Hayes—calling first his ex-wife and then an ambulance—establish convincingly that he never intended to cause great bodily harm or death as was charged in the information.

fails to take an appeal, whether by careful choice, inadvertance, indigence, or as a result of fleeing the jurisdiction ..., may waive claims of error, but any right which may have existed to a post-conviction hearing on the constitutionality of imprisonment will remain undiminished." *People v. Rose*, 43 Ill.2d 273, 279, 253 N.E.2d 456 (1969).

■ In the ordinary course of things, then, we would be obliged to dismiss this petition pursuant to section 2254(b) to allow the state courts a first crack at ruling upon Petitioner's claimed errors. This would further the policy of comity underlying the exhaustion rule, which policy is based upon "the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 514, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982) (quoting *Ex Parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886)). Exhaustion of state remedies is required in all but exceptional circumstances. *Rose*, 455 U.S. at 514, 102 S.Ct. at 1201. Indeed, so strong is this policy that an entire petition must be dismissed although some, but not all, claims made are exhausted. *Id.* at 522, 102 S.Ct. at 1205.

■ In the case at bench, though, it appears likely that Petitioner would be precluded from bringing his claims to an Illinois court because of the statute of limitations for the Post–Conviction Hearing Act. At the time Petitioner's conviction was entered in 1977 the Act had a 20 year limitation period, but on January 1, 1984, an amendment to the Act became effective which shortens the limitation period to ten years. The limitation period runs from the time of sentencing, *see People v. Rose*, 43 Ill.2d at 278, 253 N.E.2d 456, and the amended limitation period applies retroactively. *People v. Bates*, 124 Ill.2d 81, 124 Ill.Dec. 407, 529 N.E.2d 227 (1988). Hence, to be timely the post-conviction petition

here would have to have been filed by July 6, 1987. Petitioner did not meet that deadline—in fact, a letter submitted with his reply brief indicates that he was not even aware of the Post–Conviction Hearing Act or its limitation period until late November of 1987.

Even though technically no Illinois court has held that Petitioner's post-conviction remedy is time barred, we need not make him jump through the hoop of seeking such relief if it is obvious that the attempt would be futile. *United States ex rel. Williams v. Brantley*, 502 F.2d 1383 (7th Cir.1974); *United States ex rel. Buckhana v. Lane*, 787 F.2d 230, 235 (7th Cir.1986) (" 'we need not direct a petitioner to pursue state remedies if the pursuit would be futile in the sense that we know that the state court would reject the claim' ") (quoting *United States ex rel. Tonaldi v. Elrod*, 716 F.2d 431, 435 (7th Cir.1983)).

One possibility must yet be disposed of before we can find that sending Petitioner back to the state courts would be futile. The Post–Conviction Hearing Act has provided a safety-valve for its limitation period; the Act reads: "No proceedings under the Article shall be commenced more than 10 years after rendition of final judgment, unless the petitioner alleges facts showing that the delay was not due to his culpable negligence." Ill.Rev.Stat. ch. 38, ¶ 122–1 (1989). Thus, a state court might still consider Petitioner's claims if it is convinced that his failure to timely raise those claims was through some cause other than his culpable negligence.

Unfortunately, however, the possibility of Petitioner succeeding with such an argument is exceedingly low; as noted by an Illinois Supreme Court Justice, it is not possible "to find even one appellate or supreme court case in which a post-conviction petition was allowed based on a showing that the delay was not due to ... culpable negligence." *People v. Bates*, 124 Ill.2d 81, 124 Ill.Dec. 407, 411, 529 N.E.2d 227, 231 (1988) (Clark, J., dissenting). Culpable negligence, for instance, has been attributed to a *pro se* litigant who was indigent, unaware of the law, and who had only a sixth

grade education, *People v. Diefenbaugh,* 40 Ill.2d 73, 237 N.E.2d 512 (1968), and it has likewise been attributed to a petitioner who showed that the delay was due, at least in part, to his own mental illness. *People v. Montgomery,* 45 Ill.2d 94, 256 N.E.2d 802 (1970). *See also People v. Harrison,* 32 Ill.App.3d 641, 336 N.E.2d 143 (1st Dist.1975). Although we are not aware of the grounds Petitioner might raise to show a lack of culpable negligence in failing to timely seek post-conviction relief, we might surmise from his petition in our court that it would approximate the scenarios of *Diefenbaugh* and *Montgomery.*

■ Hence, were we to dismiss this petition for failure to exhaust state court remedies, we are confident our "mate" of the case into the state court would elicit a rapid "checkmate" right back to us. Dismissal in these circumstances would be improper. *See United States ex rel. Branion v. Gramly,* 664 F.Supp. 1149 (N.D.Ill.1987), *aff'd,* 855 F.2d 1256 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989) (denying dismissal of petition on exhaustion of state remedies grounds where petitioner's own action of escaping custody had resulted in the delay in timely seeking post-conviction relief); *compare United States v. Ragen,* 244 F.2d 420 (7th Cir.), *cert. denied,* 355 U.S. 846, 78 S.Ct. 71, 2 L.Ed.2d 55 (1957), and *United States ex rel. Milone v. Camp,* 643 F.Supp. 679 (N.D.Ill.1986) (holding that dismissal on exhaustion of state remedies grounds is appropriate where the state court may find the delay in seeking post-conviction relief not to have been caused by culpable neglect).

The Supreme Court, in fact, has recently underscored this consideration. In *Harris v. Reed,* — U.S. —, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Court applied the rule of *Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983), which forecloses federal considera-

tion of state court decisions only where the state court's opinion contains a "plain statement that [its] decision rests upon adequate independent state grounds," to federal habeas dismissals due to state court procedural defaults. The Court cautioned, however, that:

> [t]his rule necessarily applies only when a state court has been presented with the federal claim, as will usually be true given the requirement that a federal claimant exhaust state court remedies before raising the claim in a federal habeas petition. Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.

*Harris,* 109 S.Ct. at 1043, n. 9.

Hence, we find that Petitioner has exhausted his state court remedies as fully as is now possible,[2] *see Teague v. Lane,* — U.S. —, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (plurality opinion), and so this petition is properly in this Court.

### Procedural Default

■ Having so decided, however, we now turn to the issue of procedural default. This issue is raised because Petitioner's long delay in seeking relief from his conviction is not relevant just to his post-conviction state court proceedings, but is relevant in our court as well. Indeed, this petition is scarcely opened before it elicits an inquiry into the reason for the long delay. Whatever the true reason, though, it is plain that one effect of the delay is to circumvent the policies of comity meant to be advanced by the exhaustion of state remedies rule. As we have seen, Petitioner has avoided our sending this case back to an Illinois court only because he slumbered upon his rights to a post-conviction review for a sufficiently long period.

2. Of course, this finding and the assumptions we have made are in no way binding upon the state courts. Thus, though we herein decline Petitioner any relief upon the basis of procedural default, we see no impediment to his at least trying to raise these claims before a state tribunal. Should he be successful in gaining an audience in state court, the procedural default would dissolve.

The long delay also circumvents the policy of promoting judicial economy. This policy requires that criminal defendants

... comply with state rules in time to prevent unnecessary subsequent proceedings. A timely objection or contention may prevent the error from occurring and spare multiple courts the need to review a judgment. If the claim may be pressed on collateral attack even though it was not raised at trial or on appeal, the incentive to raise the claim in time is diminished.

*Barrera v. Young,* 794 F.2d 1264, 1268 (7th Cir.1986) (citing *Nutall v. Greer,* 764 F.2d 462 (7th Cir.1985)).

These considerations drop us squarely into the lap of the *doctrine of waiver or forfeiture* within the federal habeas corpus context; this doctrine teaches that

where a prisoner by his own default is no longer permitted under state rules to seek review in the highest court, then, subject to the exception to be developed below, we think the very same policy [of federalism and comity] requires that he be deemed to have waived his right to habeas relief on grounds that he might have presented but did not present to [a state tribunal].

*Nutall v. Greer,* 764 F.2d 462, 464 (7th Cir.1985). The "exception" noted in *Nutall* calls for application of the *cause-and-prejudice standard* developed in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to determine if a particular case can be appropriately dismissed on waiver grounds. Additionally, in cases of "manifest injustice or fundamentally unjust incarceration" the waiver doctrine is not to be applied, *Buelow v. Dickey,* 847 F.2d 420, 427 (7th Cir.1988), *cert. denied sub nom. Buelow v. Bablitch,* —— U.S. ——, 109 S.Ct. 1168, 103 L.Ed.2d 227 (1989), and, in such "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397

(1986). The *Sykes* rule is conjunctive—cause *and* prejudice must both be established to avoid dismissal on procedural default grounds. *Buelow,* 847 F.2d at 425.

■ This case is easily resolved upon the cause prong of the *Sykes* rule, for Petitioner's sole excuse for not filing a timely Post–Conviction Hearing Act petition is that "Petitioner is a lay person and not knowledgeable to the law." This is insufficient, especially when Petitioner concedes that an attorney advised him to file his petition in federal court in late 1987, and another told him he was probably too late to seek post-conviction relief from the state courts. Petitioner obviously had the opportunity to consult attorneys about his case—he simply chose to wait 10 years before doing so.

Moreover, Petitioner's *pro se* status and ignorance of the law alone are wholly insufficient to establish cause. These grounds did not succeed in *United States ex rel. Stewart v. Ragen,* 231 F.2d 312, 314 (7th Cir.1956), where petitioner "[sought] to excuse his failure to exhaust his State Court remedies by reference to his lack of education, his failure to understand legal proceedings, and a prison rule prohibiting one inmate from assisting another in preparing legal proceedings. Assuming the truth of such allegations, we do not think they enlarge his right to a federal habeas corpus." *See also Vasquez v. Lockhart,* 867 F.2d 1056, 1058 (8th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2453, 104 L.Ed.2d 1007 (1989) (holding that *pro se* status and unfamiliarity with the English language and the United States court system do not establish cause); *Smittie v. Lockhart,* 843 F.2d 295, 298 (8th Cir.1988) (petitioner's *pro se* status and ninth grade education do not establish cause); *Hughes v. Idaho State Board of Corrections,* 800 F.2d 905, 908–09 (9th Cir.1986) (petitioner's *pro se* status, illiteracy and lack of assistance in writing and filing court papers do not constitute cause); *Bennett v. Fortner,* 863 F.2d 804, 808 n. 5 (11th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 2077, 104 L.Ed.2d 641 (1989) (similar); and *Alexander v. Dugger,* 841 F.2d 371, 374 n. 3 (11th Cir.1988) (similar); *compare Strickland v.*

*Marshall,* 632 F.Supp. 590, 598–99 (S.D. Ohio), *app. dismissed,* 803 F.2d 721 (6th Cir.1986).

■ Finally, although Petitioner does not raise the point, we also find that the fact that the limitation period under the Post–Conviction Hearing Act was shortened during Petitioner's incarceration does not establish cause, either. The amendment became effective, as earlier noted, on January 1, 1984, but Petitioner had until July 6, 1987, in which to file a timely post-conviction relief petition. The 2½ year period was more than ample time for Petitioner to put his materials together.

### Conclusion

■ Hence, we find that Petitioner has failed to establish cause for his procedural default. We further find that no "manifest injustice" or "fundamentally unjust incarceration" is present here, and so that ends the matter. We note, though, that if we were called upon to decide the question, we would likewise hold that Petitioner is in no way prejudiced by his procedural default. His most compelling argument is that he was mentally incompetent to enter a guilty plea, due to the drugs he was prescribed at the time. Yet this argument would not entitle Petitioner to relief here, because it is clear Petitioner can establish only a *possibility* that his mental faculties were impaired, when to be afforded even an evidentiary hearing the petition must show by clear and convincing evidence that substantial doubt exists as to Petitioner's competency at the time of the plea. *Price v. Wainwright,* 759 F.2d 1549 (11th Cir.1985). Petitioner's medical exhibits suggest only that the drugs may have impaired Petitioner's faculties. While his affidavits suggest that the drugs adversely affected Petitioner's alertness during that time period, the strength of these are diminished greatly by the fact that all were written by family members; further, the affidavits are contradicted by Petitioner's apparent alertness during each of his court appearances, as is

clear from a reading of the transcripts of those proceedings.

Further, and without going into unnecessary detail, we are prepared to find as well that Petitioner's other contentions are equally meritless, and hence to find that Petitioner was not prejudiced through his procedural default. Because we have found that Petitioner failed to establish cause for his procedural default, though, we do not need to reach this issue.

*Ergo,* for the above reasons, Petitioner's petition under 28 U.S.C. § 2254 is DENIED, and the cause is DISMISSED.[3]

Case CLOSED.

---

**3.** As we earlier intimated, our ruling here is necessarily without prejudice. Should Petitioner convince a state court to hear his claims on their merits—despite our prediction that no state court would reach the merits—then after Petitioner exhausts all state court remedies on the merits he could, if necessary, again bring his case to our court.