612 So.2d 342 (1992)
Alvin CULBERSON
v.
STATE of Mississippi.
No. 90-KA-0651.
Supreme Court of Mississippi.
December 10, 1992.
Catherine V. Kilgore, Batesville, Robert B. Wiygul, New Orleans, LA, for appellant.
*343 Michael C. Moore, Atty. Gen. and Charlene R. Pierce, Sp. Asst. Atty. Gen., Jackson, for appellee.
En banc.
McRAE, Justice, for the Court:
Presently before the Court is the state's oldest death-row inmate, Alvin Culberson. Here he challenges the trial court's application of the three-year period of limitations in our Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-1, et seq., (Supp. 1991) to his request to set aside a 1971 conviction which was used as an aggravating factor justifying the imposition of the death penalty. We are asked to decide whether Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), is an intervening decision justifying relief from the limitations period. Alternatively, we are implored to find the limitations period unconstitutional in contravention of Culberson's rights under the Due Process Clause of the Constitution of the United States and Article 3, Section 21 of the Mississippi Constitution (1890), which bars suspension of the Writ of Habeas Corpus. We hold that Johnson v. Mississippi is not an intervening decision within the meaning of the statute, and we decline to address Culberson's constitutional argument, having recently ploughed that furrow in the case of Cole v. State, 608 So.2d 1313 (Miss. 1992). Finding no fault with the trial court's denial of Culberson's motion for post-conviction relief, we affirm.

FACTS
On November 29, 1971, Alvin Culberson (Culberson), indicted for assault and battery with intent to kill and represented by counsel, entered a plea of guilty to the charge and was sentenced by the Circuit Court of the First Judicial District of Harrison County to serve five (5) years in a Mississippi state penitentiary. After serving his time and completing his sentence without objection, he resumed his criminal habits. In 1977, Culberson was tried and convicted of capital murder while engaged in the commission of a robbery or an attempt to commit such a felony. During the sentencing phase of Culberson's 1977 trial, two prior convictions were submitted as aggravating circumstances. One of the two prior convictions was the 1971 felony of assault and battery with intent to kill. In 1979, the capital murder conviction was affirmed by this court. Culberson v. State, 379 So.2d 499 (Miss. 1979).
On March 14, 1989, more than seventeen (17) years after entry of his guilty plea to the assault and battery with intent to kill charge, Culberson filed a motion pursuant to the provisions of our UPCCRA to set aside the plea and conviction alleging:
At the plea hearing, the judge asked Mr. Culberson if he knew what he was charged with, but did not tell him the maximum sentence possible for assault and battery with intent to kill. Neither the judge nor Mr. Harris[1] explained to Mr. Culberson the elements of assault and battery with intent to kill. Mr. Culberson entered his plea of guilty because his attorney had told him he should, and without an understanding of the nature and consequences of that plea.
On May 11, 1990, the Circuit Court denied Culberson's motion on the ground that it was procedurally barred under § 99-39-5 of our UPCCRA. Culberson appeals contending that:
(a) Johnson II is an intervening decision excepted from the limitations period of the act; and
(b) the limitations period of our UPCCRA violates Article 3, Section 21 of the Mississippi Constitution (1890) by suspending the writ of habeas corpus and also violates the due process clause of the United States Constitution.

I. JOHNSON II IS NOT AN INTERVENING DECISION.
Miss. Code Ann. § 99-39-5(2) (Supp. 1991) provides:
A motion for relief under this chapter shall be made within three (3) years after *344 the time in which the prisoner's direct appeal is ruled upon by the supreme court of Mississippi or, in case no appeal is taken, within three (3) years after the time for taking an appeal from the judgment of conviction or sentence has expired, or in case of a guilty plea, within three (3) years after entry of the judgment of conviction. Excepted from this three-year statute of limitations are those cases in which the prisoner can demonstrate either that there has been an intervening decision of the supreme court of either the state of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence. Likewise excepted are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.
In Phillips v. State, 421 So.2d 476 (Miss. 1982), we held that an assault upon the constitutionality of a prior conviction used for sentence enhancement should be conducted in a proceeding in the court in which such conviction occurred and should be solely concerned with attacking that conviction. We further held that if the challenge to the prior conviction was successful, then relief from the subsequent conviction should be sought in the Mississippi court which used the prior conviction for enhancement purposes.
Culberson's complaint confirms that the alleged constitutional infirmities of his prior conviction submitted to and considered by the court as an aggravated circumstance do not appear on the face of the conviction and have not been vacated via collateral attack. The significance is magnified by our following articulation in Phillips:
An examination of the basic nature of such a constitutionally defective decision is somewhat helpful in determining the role that such a conviction may play in the application of an habitual offender statute. In Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), (Douglas, J. concurring), Justice Douglas noted:
[A] guilty plea is rendered voidable by threatening physical harm, Waley v. Johnston [316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942)], supra, threatening to use false testimony, ibid., threatening to bring additional prosecutions, Machibroda v. United States [368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)], supra, or by failing to inform a defendant of his right of counsel, Walker v. Johnston [312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941)], supra.

Id. [404 U.S.] at 266, 92 S.Ct. at 500, 30 L.Ed.2d at 435 (emphasis added).
The nature of constitutionally defective prior convictions as being voidable as opposed to void highlights two different aspects of their application in the instant case. First, unless such constitutional infirmity appears on the face of the conviction, or unless the conviction has been vacated via a collateral attack, the conviction may be used for the enhancement of sentence under an habitual offender statute. Secondly, the nature of a constitutionally defective conviction as being voidable highlights the fact that the proper challenge to such a defective conviction lies in a separate action brought expressly for that purpose.

* * * * * *

The mere fact that the defendant has chosen to collaterally attack a prior conviction has no effect upon the status of that conviction until such time as the conviction is vacated. This is in line with the language previously cited from Justice William O. Douglas indicating that constitutionally defective convictions are voidable. Until such time as they are actually voided, they may be used for habitual offender statute purposes. (emphasis ours)
Perusal of Phillips assures us that the trial court properly permitted the 1977 prior conviction of Culberson to be used as an *345 aggravated circumstance. The time limitations clock prescribed by § 99-39-5(2) began running in October 1977.
It is true that in Johnson v. State, 511 So.2d 1333 (Miss. 1987) (Johnson I), we denied a petition for post conviction collateral relief and held that the reversal by the New York court of appeals of a conviction twenty-three (23) years after its rendition did not invalidate it as an aggravating circumstance to be considered during the sentencing phase of Johnson's trial. Following our denial of the petition in Johnson I, the United States Supreme Court granted certiorari and held that in view of the New York court's action in vacating and dismissing his prior conviction, Johnson's death sentence should be re-examined because it was based partially on a reversed conviction which provided no legitimate support for the imposed sentence. See (Johnson II) Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). Johnson II quoted with approval our decision in Phillips.
Although Phillips was not a death penalty case, the same principle applies in the capital context. In Nixon v. State, 533 So.2d 1078 (Miss. 1987), we applied the reasoning of Phillips when a defendant in a capital case sought to attack the validity of a prior conviction introduced to support the finding of aggravating circumstances at sentencing. In approving the Phillips procedure, we stated:
Here the Court is asked to render guidelines for determining the admissibility of prior felony records to establish aggravating circumstances under Miss. Code Ann. § 99-19-101(5)(b) (Supp. 1986). This Court has announced the following procedure in Phillips v. State, 421 So.2d 476 (Miss. 1982).
In Phillips, the prosecution sought to use a prior Kentucky conviction to enhance the defendant's punishment under Miss. Code Ann. § 99-19-81, as amended. The defendant objected to the use of the Kentucky conviction alleging that the conviction was invalid because he had not "knowingly and voluntarily" plead guilty. In response to Phillips' argument, this Court held that the trial judge is not required to go beyond the face of the prior convictions sought to be used in establishing a defendant's status as an habitual offender. "If on its face, the conviction makes a proper showing that a defendant's prior plea of guilty was both knowing and voluntary, that conviction may be used for the enhancement of the defendant's punishment under the Mississippi Habitual Offender Act." Phillips, 421 So.2d at 481. See also, Moore v. State, 508 So.2d 666 (Miss. 1987).
Nixon, 533 So.2d at 1099.
Nixon extended the Phillips procedure and reasoning to capital cases in which prior convictions are used to support aggravated circumstances.
Justice Banks, in his dissenting opinion, tells us that "in death penalty cases, a prior conviction is only one of several statutory aggravating factors, and, it was thought, prior to Johnson v. Mississippi that a successful attack on such conviction, even when used as an aggravating factor, would be unavailing."
We do not agree and cannot comprehend why prior to Johnson II it was thought that a successful attack on a prior conviction used as one of two aggravating circumstances in a capital conviction would not redound beneficially to a prisoner's subsequent collateral challenge to the later capital sentence. This was precisely our position in Phillips where we stated:
Should such proceeding ... succeed in overturning the conviction, then relief should be sought in Mississippi.
Phillips, 421 So.2d at 482.
If prior to Johnson II relief was unavailing as suggested by the dissenting opinion, why did we state in Phillips that it "should be sought"? But suppose this was the thinking, does this make Johnson II an intervening decision which "actually adversely" affects the outcome of Culberson's conviction or sentence? We think not. An examination of the facts shows that Culberson is attacking his seventeen-year-old guilty plea because he was not advised concerning the maximum sentence or the elements of his crime, and, therefore, *346 was without understanding of the nature and consequences of his plea. In the trial court, he relied primarily on Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) as his basis for relief. What he considered the law to be prior to Johnson II should have no bearing on the outcome of his case. Surely, he was presumed to know the statutory limitations of our UPCCRA.
In Johnson II, the United States Supreme Court reversed the conviction and death penalty imposed by Johnson I after the New York court's invalidation of his prior New York voidable conviction properly challenged in a proceeding conceded by the State to raise appealable issues with possible merit. People v. Johnson, 69 N.Y.2d 339, 514 N.Y.S.2d 324, 506 N.E.2d 1177 (1977). The New York court's opinion states, in part:
[D]efendant ... seeks reversal of a 1963 New York assault conviction which was used as an aggravating factor at the sentencing phase of the Mississippi trial... . The defendant argues and the People concede the passage of time does not bar appeal.

* * * * * *
[T]he People concede that ... defendant has raised appealable issues with possible merit.

Johnson, 514 N.Y.S.2d at 324-25, 506 N.E.2d at 1177-78.
It is crystal clear from the record that Johnson did not think that a successful attack on his prior conviction was unavailing. In any event, each case of an alleged voidable conviction must stand or fall on applicable circumstances. In People v. Johnson, the New York prosecutorial authorities conceded appealable issues with possible merit. Such concession is not present in this case. Moreover, the majority's ruling permits anyone having a prior conviction used as an aggravating factor at the sentencing phase or for enhanced punishment to use a Rip Van Winkle approach to circumvent plain statutory prescription of our post-conviction collateral relief act.
It has been suggested that the post-conviction collateral relief statute may be read to include a decision adversely affecting the relationship between the sentence under attack and the sentence presently served or given effect. We could arrive at such a construction, however, only by adding words and meaning to the statute contrary to its intent and purpose. The statute plainly states that an exception to its limitations period is restricted to an intervening decision "which would actually adversely affect the outcome of the conviction or sentence." To adopt Culberson's argument would require us to rewrite the statute. We are unwilling to engage in such blatant judicial legislation.
Culberson's capital murder conviction or sentence cannot be actually adversely affected unless and until his prior conviction used as an aggravating factor is properly and successfully challenged.
In Baugh v. Lane, 722 F. Supp. 525 (C.D.Ill. 1989), the petitioner plead guilty to murder and was sentenced on July 6, 1977. Baugh never appealed this conviction nor sought any post-conviction remedy. He subsequently plead guilty and was sentenced on seven (7) federal charges involving the illegal use of weapons. After successfully challenging the federal convictions and serving his federal time, Baugh was transferred to Illinois prison officials to serve his state time. Almost eleven (11) years after the state guilty plea and sentence, Baugh sought review of his case. He claimed that the guilty plea was involuntary due, among other related grounds, to his lack of understanding of the charge against him and the required mental state for a murder conviction. The District Court first found that the Illinois Post-Conviction Hearing Act would preclude state review of Baugh's claims in that Baugh failed to comply with the act's statute of limitations. 722 F. Supp. at 529. Baugh's sole excuse for not filing a timely petition was "[p]etitioner is a lay person and not knowledgeable to the law." The Court found the excuse wholly insufficient. The opinion stated:
Petitioner's pro se status and ignorance of the law alone are wholly insufficient to establish cause. These grounds did *347 not succeed in United States ex rel. Stewart v. Ragen, 231 F.2d 312, 314 (7th Cir.1956), where petitioner "[sought] to excuse his failure to exhaust his State Court remedies by reference to his lack of education, his failure to understand legal proceedings, and a prison rule prohibiting one inmate from assisting another in preparing legal proceedings. Assuming the truth of such allegations, we do not think they enlarge his right to a federal habeas corpus." See also Vasquez v. Lockhart, 867 F.2d 1056, 1058 (8th Cir.1988), cert. denied, [490] U.S. [1100], 109 S.Ct. 2453, 104 L.Ed.2d 1007 (1989) (holding that pro se status and unfamiliarity with the English language and the United States court system do not establish cause); Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988); (petitioner's pro se status and ninth grade education do not establish cause); Hughes v. Idaho State Board of Corrections, 800 F.2d 905, 908-09 (9th Cir.1986) (petitioner's pro se status, illiteracy and lack of assistance in writing and filing court papers do not constitute cause); Bennett v. Fortner, 863 F.2d 804, 808 n. 5 (11th Cir.), cert. denied, [490] U.S. [1071], 109 S.Ct. 2077, 104 L.Ed.2d 641 (1989) (similar); and Alexander v. Dugger, 841 F.2d 371, 374 n. 3 (11th Cir.1988) (similar); compare Strickland v. Marshall, 632 F. Supp. 590, 598-99 (S.D.Ohio), app. dismissed, 803 F.2d 721 (6th Cir.1986).
Baugh at 531-32.
Logic, reason, our UPCCRA, and judicial authority tell us that Johnson II is not an intervening decision.

II. OUR UPCCRA IS NOT UNCONSTITUTIONAL
The appellant seeks to bring heavy constitutional armament into action in its attempt to convince us that the legislature has provided the State with a statute which fails to meet constitutional muster. We are afforded a bountiful legal feast with an entree merging our coram nobis procedure with constitutional habeas corpus, flavored with newly expanded theories of inherent judicial power, and garnished with due process constraints. We decline the treat because this issue has been decided against the appellant and is controlled by our recent pronouncements in Cole v. State, 608 So.2d 1313 (Miss. 1992).
Having found that Culberson's claim does not fall within an exception to the three-year limitation period prescribed in § 99-39-5(2), we affirm.
LOWER COURT'S DENIAL OF MOTION FOR POST-CONVICTION RELIEF AFFIRMED.
ROY NOBLE LEE, C.J., and HAWKINS and DAN M. LEE, P.JJ., concur.
BANKS, J., dissents with separate written opinion joined by PRATHER and SULLIVAN, JJ.
PITTMAN, J., not participating.
ROBERTS, J., not participating according to Supreme Court Internal Rules.
BANKS, Justice, dissenting:

I
Because I would hold that Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), is an intervening decision within the meaning of our Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-1, et seq., (Supp. 1991) and, in any event, an absolute temporal bar to post-conviction relief is unconstitutional, I would reverse and remand for further proceedings. I therefore dissent.

II
On November 29, 1971, Alvin Culberson pled guilty to a charge of assault and battery with intent to kill. He was sentenced to serve a term of five years in the custody of the Mississippi Department of Corrections. On January 31, 1975, during a robbery, Culberson shot and killed Grady Evans, a delivery man. Subsequently, he was tried and convicted of capital murder. He was sentenced to death. That sentence was set aside and the case remanded for a *348 bifurcated trial.[1] Following retrial, which began on October 18, 1977, he was again sentenced to death. That conviction and sentence were upheld on direct appeal.[2] During the sentencing phase of the 1977 trial, the 1971 conviction was used as an aggravating circumstance to support the imposition of the death penalty.
In March of 1989, Culberson filed a motion for post-conviction relief, challenging his 1971 guilty plea and conviction. Specifically, he requested that the court enter an order vacating his conviction for assault and battery with intent to kill. The circuit court, without addressing the merits of Culberson's claim, by order dated May 11, 1990, denied the motion. The court premised its refusal to grant the relief sought on the grounds that the motion was barred under Section 99-39-5 of the Mississippi Uniform Post-Conviction Collateral Relief Act (Act).

III
A brief review of the facts concerning the conviction presently under attack is gleaned from the filings herein. On April 3, 1971, while in jail pending trial, Culberson was in a group of prisoners returning to their respective cells, after attending Mass. While en route the prisoners attempted an escape. They wielded knives and took a jailer hostage. These events occurred on or near an elevator on the third floor of the jail. In his brief, Culberson states that he had no idea this would happen. He also claims that the prisoners, after kidnapping the jailer, ordered him to press the "down" button in the elevator. The elevator stopped at the first floor where one of the prisoners was shot immediately. Culberson fled. He offers as an excuse for his flight, his fear that he, also, would be shot. He was apprehended, and charged with kidnapping and assault and battery with intent to kill.
There is no transcript of the November 29, 1971, plea proceedings available. It is clear from the record, however, that Culberson was represented by counsel at the hearing. The court sentenced him to serve a term of five years in the Mississippi State Penitentiary. Culberson claims that he asked his attorney to speak to the other prisoners involved in or present during the riot in an effort to ascertain whether or not they would verify that he played no part in planning or executing the kidnapping, but was merely caught in the episode. He alleges that his attorney refused to question other inmates and suggested to Culberson that he plead guilty to all three charges.
Culberson contends that during the plea proceedings, the judge did not tell him the maximum sentence possible for assault and battery with intent to kill. Additionally, neither the judge nor counsel explained to him the elements of the stated charge. As a result, he entered his guilty plea without an understanding of the nature and consequences of the plea and because his attorney told him to do so.
In support of his motion, Culberson filed an affidavit of a clinical psychologist. The psychologist wrote that Culberson has the mental age of a twelve year old. Additionally, his IQ was found to be in the borderline retarded range. Testing also indicated evidence of perceptual motor/brain dys-function. The psychologist stated that given the above limitations, Culberson would lack understanding of the crime with which he was charged, and the rights he was waiving by pleading guilty, unless these matters were carefully explained to him.
Culberson also filed his own affidavit claiming that, as a result of his limited education, he did not understand the proceedings or the crime with which he was charged when he pled guilty. Furthermore, he could not appreciate the function of an attorney and thought that he had no choice concerning his right to plead or not plead guilty to the charges lodged against *349 him. Culberson gave as a final reason ignorance of his right to petition the court for relief from the conviction, until an attorney agreed to assist him some seventeen years later.
Notwithstanding the affidavits, the circuit court denied a hearing on the motion, stating that the motion was barred by the three-year statute of limitations contained in Miss. Code Ann. § 99-39-5(2) (Supp. 1991).
Distressed, Culberson brings this appeal.

IV
Our usual course is to dispose of cases without reaching constitutional questions if that is at all possible. Ferguson v. Watkins, 448 So.2d 271, 285 (Miss. 1984) (Bowling, J., dissenting) quoting Hutchinson v. Proxmire, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). It is appropriate, therefore, to first consider Culberson's contention that the trial judge erred in not finding that Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), and Johnson v. State, 547 So.2d 59 (Miss. 1989) are intervening decisions that except Culberson's case from the three-year statute of limitations period.
The sections of the Act pertinent to this appeal provide,
A motion for relief under this chapter shall be made within three (3) years after the time in which the prisoner's direct appeal is ruled upon by the supreme court of Mississippi or, in case no appeal is taken, within three (3) years after the time for taking an appeal from the judgment of conviction or sentence has expired, or in case of a guilty plea, within three (3) years after the entry of the judgment of the conviction. Excepted from this three year statute of limitations are those cases in which the prisoner can demonstrate that there has been an intervening decision of the supreme court of either the state of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence. Likewise excepted are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.
Miss. Code Ann. § 99-39-5(2).
The state argues and, the majority accepts, that Johnson v. Mississippi is not an intervening decision within the meaning of the Act. It is contended that Phillips v. State, 421 So.2d 476 (Miss. 1982), outlined the procedure to be followed, prior to the enactment of the post-conviction relief act, when a defendant sought to challenge a prior conviction on the grounds that it was constitutionally defective as a result of an involuntary plea of guilty, which conviction the state wished to use to support enhanced punishment. Phillips, 421 So.2d 476. The court held that if and when the conviction was reversed it could constitute a basis for post-conviction relief from the habitual criminal conviction. Id. at 483[3]. The state contends further that this Court did not hold that such an attack would be unavailing until 1987 in Johnson v. State, 511 So.2d 1333 (Miss. 1987) (hereinafter Johnson I), where we held, inter alia that "a foreign state cannot vitiate the death penalty verdict in this state by setting aside a prior conviction of a violent crime through a collateral relief petition." Id. at 1338[4].
*350 Therefore, the argument goes, between 1982 and 1987, there was no reason for Culberson to believe that an attack on the 1971 conviction would be unavailing; there was nothing discouraging a collateral attack on the sentence between 1982 and 1987 at the time the statute of limitations expired. Since Culberson was convicted prior to April 17, 1984, he had three years from that date to file his petition seeking post-conviction relief from the 1972 conviction.
As we pointed out in Johnson I, however, Phillips has no application to death penalty cases. 511 So.2d at 1337. Thus the present majority's reliance on the language of Phillips that relief "should be sought", Majority opinion, ante, p. 345, where a prior conviction is overturned is misplaced. Phillips was charged as an habitual offender. The prescribed number of prior convictions is absolutely prerequisite to conviction and punishment under the habitual offender statute. Miss. Code Ann. § 99-19-81 (1972). In death penalty cases, a prior conviction is only one of several statutory aggravating factors, and, it was thought, prior to Johnson v. Mississippi, that a successful attack on such a conviction, even when used as an aggravating factor, would be unavailing. 511 So.2d at 1337.
The United States Supreme Court held for the first time in Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, that pursuant to the Eighth Amendment's prohibition against cruel and unusual punishment, reversal of a conviction used as an aggravating factor required a re-examination of a Mississippi death sentence. Id. We cannot say, as the state suggests, somewhat disingeniously, that Culberson should have anticipated that ruling based on Phillips. Indeed the state suggested and persuaded a majority of this Court of a contrary view in Johnson I. Even the dissenters in Johnson I failed to find Phillips more than "arguably analogous." 511 So.2d at 1344, (Robertson, J., dissenting).
There can be little question then that Culberson had no reason to know that an attack on his 1971 conviction would be more than an exercise in futility prior to Johnson v. Mississippi. The majority suggests that Culberson should be charged with knowledge that a challenge to a prior conviction would be availing because Johnson pressed his challenge. If that were the case, it is hard to imagine that any intervening decision would be truly new. No matter how remote the chance of success each party would be faulted for not having taken the shot in the dark. Surely this is not what is contemplated by the statute.
The more serious question is whether, in light of the fact that the decision in Johnson v. Mississippi relates to Culberson's death penalty as opposed to his 1971 guilty plea, that decision can be viewed as intervening within the meaning of the statute. That is, did the decision adversely affect the "outcome" of his "conviction or sentence." Miss. Code Ann. § 99-39-5(1)(i).
The statute may be read to restrict intervening decisions to those which have an impact on the conviction and sentence under attack. On the other hand, it can be construed to include a decision adversely affecting the relationship between the sentence under attack and the sentence presently being served or given effect. In either instance, the effect is that the petitioner is given an opportunity for relief from whatever adversity is imposed by virtue of the allegedly tainted action. In the first instance, the taint is recognized by virtue of the new decision. In the second instance, the relationship between the taint and the opportunity for relief from the continuing effect is made visible. Seeing no principled distinction, I would hold that where, as here, there is an intervening decision which makes an attack on a previous conviction availing, if successful, with respect to the present effects of that conviction, *351 the decision is intervening within the statute. This interpretation does not "rewrite the statute", as the majority contends but merely interprets it in a manner consistent with the value to be served. That is, to limit attacks on prior convictions to those which are significant to some real interest and not to defects which could in any way be viewed as harmless.

V

a.
An issue presented in this appeal is whether the Mississippi Uniform Post-Conviction Collateral Relief Act (hereinafter "Act"), codified as Miss. Code Ann. § 99-39-1 et seq. (Supp. 1992), insofar as it imposes an inflexible time bar of three years, is unconstitutional as violative of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States or a suspension of the writ of habeas corpus in violation the Mississippi Constitution[5]. I agree with the majority that this issue has been decided adversely to Culberson's position in Cole v. State, 608 So.2d 1313 (Miss. 1992). I adhere to my dissent in that case and add what follows.

b.
The State contends that the Court must determine whether Culberson has standing to lodge an attack under Section 21 of the Mississippi Constitution. In order to have standing, Culberson must demonstrate that he has been disadvantaged. In addition, he must state specifically how he has been slighted by the provisions of the Act. Reynolds v. State, 521 So.2d at 915. Particularly, he must point to a right, privilege, or opportunity which has been denied him by the act, but for which he would have enjoyed had the act not been passed. Id.
Culberson argues that the three-year statute of limitations in the Act unconstitutionally suspends the writ of habeas corpus preventing him from challenging the constitutionality of his conviction. Thus, the issue becomes, would Culberson have been able to attack his conviction under the writ of habeas corpus; if he would not have been able to challenge his conviction under the writ, he has no standing to challenge the constitutionality of the Act.
The writ of habeas corpus[6] predates the Magna Charta of 1215. Bell, Habeas Corpus: The "Great Writ" in Mississippi State Courts, 58 Miss.L.Rev. 25 (1988). It has appeared in all of Mississippi's Constitutions. Id. at 26. As interpreted by this Court, however, it is narrow in both its scope and applicability. Nelson v. Tullos, 323 So.2d 539, 542 (Miss. 1975); Keller v. Romero, 303 So.2d 481, 483-84 (Miss. 1974).
In Mississippi, the writ has been utilized as a post-conviction remedy to release a person from incarceration in two limited instances: where petitioner for the writ was convicted under an invalid statute or by a court lacking jurisdiction. Nelson v. Tullos, 323 So.2d at 542, (citing numerous decisions in support). Technical application of the writ normally would deal the fatal blow to Culberson's contentions, for he was neither convicted under an invalid statute or by a court lacking jurisdiction. Thus, in the case we now consider, the writ of habeas corpus would not have been the appropriate remedy.

c.
That this is so is the result of this Court's choice of alternate routes to fulfill the command of the Due Process Clause of the Fourteenth Amendment. See, Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949); State v. Blackford Circuit Court, *352 229 Ind. 3, 95 N.E.2d 556, 561 (1950). In answer to this command, some states expanded available relief under their habeas corpus provisions, others relied upon the ancient writ of error coram nobis. Commonwealth ex rel. Stevens v. Myers, 419 Pa. 1, 213 A.2d 613, note 19, (1965) and cases cited therein. We chose the latter route. See, Rogers and Thornhill v. Jones, 240 Miss. 610, 128 So.2d 547 (1961); Nelson v. Tullos, 323 So.2d 539 (Miss. 1975).
The writ of error coram nobis, though recognized for a time by statute was a creation of the common law. Pryor v. Woodall Industries, Inc., 250 Miss. 672, 167 So.2d 920 (1964); See also, Hawie v. State, 121 Miss. 197, 83 So. 158 (1919); Carraway v. State, 163 Miss. 639, 141 So. 342 (1932). It was "developed in England by the judiciary during the 16th century to relieve litigants from judicial wrongs for which there was no remedy." 18 Am.Jur. 2nd, Coram Nobis, § 1, pp. 621-622.
After its revitalization in the wake of the expansion of federal habeas corpus to the due process claims of state prisoners it gained United States Supreme Court acceptance as an appropriate post-conviction remedy. Hysler v. Florida, 315 U.S. 411, 62 S.Ct. 688, 86 L.Ed. 932, reh. den. (1942). That court also recognizes the writ as available to federal convicts in federal courts despite the adoption of the Federal Rules of Civil Procedure abolishing it in civil proceedings and the statutory federal post conviction relief scheme. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).
That the legislature has the authority to repeal statutes is without question. Gaudet v. Mayor and Board of Aldermen of the City of Natchez, 209 Miss. 113, 46 So.2d 79 (Miss. 1950), Miss. Const. Art. 4, § 33. There is no legislative power, however, to abolish something emanating from the common law, which is at the core of the judicial process. Political thinker Montesqieu is attributed with saying, "[t]here is no liberty if the judiciary power be not separated from legislative and executive." We echoed that concern and asserted judicial independence and supremacy in matters judicial, many years ago in Hawie v. State, 121 Miss. 197, 83 So. 158 (1919). There, we held,
[t]hat courts possess inherent powers not derived from any statute is undeniably true... . If it were granted that courts possess only such rights and powers as are conferred by statute, they would be mere creatures of the legislature, and not independent departments of the government. They are not mere creatures of the legislature, but are coordinate branches of the government, and in their sphere not subject to legislative control.
Id. at 221, 83 So. 158. Hawie is relevant here, especially, because there the Court wrote to justify the use of the writ of error coram nobis. Support for the writ was founded upon the inherent power of the court over its judgments and proceedings. Hawie, 121 Miss. at 221, 83 So. 158. The opinion unequivocally provides that the writ, since it was of common-law origin, could not be abolished by the legislature.
More than fifty years later, in Newell v. State, 308 So.2d 71 (Miss. 1975), we reiterated our supremacy in matters of judicial concern. In reaching this decision, our predecessors relied upon those provisions of the Constitution which spoke to separation of powers, such as article 1, sections 1, 2, and article 6, 144. Article 1 provides,
The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.
Miss. Const. art. 1, § 1. Section 2 prevents one branch of government from exercising powers belonging to the other magistracies. Miss. Const. art. 1, § 2. The judicial power of the state vests in the Supreme Court; there is no room for a division of authority between this court and the legislature as to control over our decrees. We hold that the writ of error coram nobis is no more amenable to an inflexible time bar imposed by the legislature than is a bill in the legislature subject to the procedural dictates of this court.

*353 d.
It is clear that at common law the writ was allowed without limitation of time. United States v. Morgan, 346 U.S. at 507, 98 L.Ed. at 254. Although due diligence and the doctrine of laches were generally applicable, no absolute bar existed. This is especially important in the criminal application of the writ. The value involved, liberty or as here life, is at the core of the founding principles of this country.
The right to liberty is born with the person and dies only with the person. It is a right that by nature is always with the person. He cannot voluntarily rid himself of it while he lives. Neither Presidents, Congresses, Governors, Legislatures, nor courts can interfere with the Creator-given right of liberty.
Blackford Circuit Court, 95 N.E.2d at 563 (Gilkson, J. concurring) (emphasis added). Article 3, section 14 of the Mississippi Constitution is the state counterpart to the Bill of Rights and promises liberty to residents of our state.
Where deprivation of life or liberty is a direct product of a conviction offensive to the constitution of our state or nation due process demands a remedy unfettered by an absolute time limitation. State v. Blackford Circuit Court, 229 Ind. 3, 95 N.E.2d 556, 561 (1950) As recognized by the Supreme Court of Indiana,
[t]he better rule would be for the trial judge in each case to try all the facts presented to him by the petition for a writ, then if, from such presentation of evidence, it occurs to the trial judge that sufficient time has elapsed since the sentence of the man and that the man, in fact, had sufficient knowledge of his rights, the petition should be denied for lack of diligence.
Id. That court invalidated Indiana's five year statute of limitations on coram nobis.
I would hold that the three-year period of limitations as prescribed in the Uniform Post-Conviction Collateral Relief Act, insofar as it applies to alleged due process violations, operates to create a presumption of diligence for that period which evaporates upon expiration. Upon expiration of the two year period the burden will be upon the petitioner to demonstrate a reasonable excuse for the delay and the doctrine of laches will obtain.
In Allen v. Mayer, 587 So.2d 255 (Miss. 1991), we outlined the three independent criteria that must be shown before laches will operate as a bar to litigation. The party invoking the doctrine must demonstrate, (1) delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted. Id. at 260. Whether laches operates as a bar in a particular case is a question addressed to the discretion of the trial court. Id. Pleading laches, affirmatively, usually calls for a full hearing on the merits. Id. As I would have in Cole, I would remand this case for such a hearing.
PRATHER and SULLIVAN, JJ., join this opinion.
NOTES
[1] Harris was attorney for Culberson.
[1] Culberson v. State, 348 So.2d 1025 (Miss. 1977).
[2] Culberson v. State, 379 So.2d 499 (Miss. 1980). Three justices entered a strong dissent on grounds that the sentence was disproportionate to the crime and the accused, in light of the fact that an accomplice pled guilty to manslaughter and served but two and one-half years. 379 So.2d at 513.
[3] Interestingly, the Court stated that "a writ of error coram nobis [was] the form of remedy available to a defendant, in the event he is convicted and sentenced under the habitual offender statute, and subsequently is successful in his collateral attack based upon constitutional defects of that conviction." Phillips, 421 So.2d at 483.
[4] Other grounds for denial of Johnson's motion for post-conviction relief were Johnson waived his right to challenge the validity of the New York conviction because he did not raise the point on direct appeal from his Mississippi conviction; Mississippi capital sentencing procedures would become capricious if the post-sentencing decision of another state could invalidate a Mississippi death sentence, because prior convictions then could never be used to guide jury discretion; that there was no evidence that the New York post-conviction proceedings had been truly adversarial; and that the New York conviction still provided adequate support for the Mississippi death sentence, given that the accused's crime had been serious enough for him to be convicted and final enough for him to have served a prison term. Johnson, 511 So.2d 1333.
[5] Miss. Const. art. 3, § 21, provides that the "privilege of the writ of habeas corpus shall not be suspended, unless when in the case of rebellion or invasion, the public safety may require it, nor ever without the authority of the legislature." Id.

This issue was presented to this Court in Aldridge v. State, 524 So.2d 330, 331 (Miss. 1988) and Reynolds v. State, 521 So.2d 914, 915-16 (Miss. 1988). In both opinions, the Court declined the invitation to address the questions presented as the appellant's were without standing to challenge the provisions of the Act.
[6] See, supra notes 4 and 5 at p. 349, 351 for federal and state texts of the writ.